(Slip Opinion)          OCTOBER TERM, 2009          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CITY OF ONTARIO, CALIFORNIA, ET AL. *v.* QUON ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 08–1332.   Argued April 19, 2010—Decided June 17, 2010

Petitioner Ontario (hereinafter City) acquired alphanumeric pagers able to send and receive text messages. Its contract with its service provider, Arch Wireless, provided for a monthly limit on the number of characters each pager could send or receive, and specified that usage exceeding that number would result in an additional fee. The City issued the pagers to respondent Quon and other officers in its police department (OPD), also a petitioner here. When Quon and others exceeded their monthly character limits for several months running, petitioner Scharf, OPD's chief, sought to determine whether the existing limit was too low, *i.e.,* whether the officers had to pay fees for sending work-related messages or, conversely, whether the overages were for personal messages. After Arch Wireless provided transcripts of Quon's and another employee's August and September 2002 text messages, it was discovered that many of Quon's messages were not work related, and some were sexually explicit. Scharf referred the matter to OPD's internal affairs division. The investigating officer used Quon's work schedule to redact from his transcript any messages he sent while off duty, but the transcript showed that few of his on-duty messages related to police business. Quon was disciplined for violating OPD rules.

He and the other respondents—each of whom had exchanged text messages with Quon during August and September—filed this suit, alleging, *inter alia*, that petitioners violated their Fourth Amendment rights and the federal Stored Communications Act (SCA) by obtaining and reviewing the transcript of Quon's pager messages, and that Arch Wireless violated the SCA by giving the City the transcript. The District Court denied respondents summary judgment on the

constitutional claims, relying on the plurality opinion in *O'Connor* v. *Ortega*, 480 U. S. 709, to determine that Quon had a reasonable expectation of privacy in the content of his messages. Whether the audit was nonetheless reasonable, the court concluded, turned on whether Scharf used it for the improper purpose of determining if Quon was using his pager to waste time, or for the legitimate purpose of determining the efficacy of existing character limits to ensure that officers were not paying hidden work-related costs. After the jury concluded that Scharf's intent was legitimate, the court granted petitioners summary judgment on the ground they did not violate the Fourth Amendment. The Ninth Circuit reversed. Although it agreed that Quon had a reasonable expectation of privacy in his text messages, the appeals court concluded that the search was not reasonable even though it was conducted on a legitimate, work-related rationale. The opinion pointed to a host of means less intrusive than the audit that Scharf could have used. The court further concluded that Arch Wireless had violated the SCA by giving the City the transcript.

*Held:* Because the search of Quon's text messages was reasonable, petitioners did not violate respondents' Fourth Amendment rights, and the Ninth Circuit erred by concluding otherwise. Pp. 7–17.

(a) The Amendment guarantees a person's privacy, dignity, and security against arbitrary and invasive governmental acts, without regard to whether the government actor is investigating crime or performing another function. *Skinner* v. *Railway Labor Executives' Assn.*, 489 U. S. 602, 613–614. It applies as well when the government acts in its capacity as an employer. *Treasury Employees* v. *Von Raab*, 489 U. S. 656, 665. The Members of the *O'Connor* Court disagreed on the proper analytical framework for Fourth Amendment claims against government employers. A four-Justice plurality concluded that the correct analysis has two steps. First, because "some [government] offices may be so open . . . that no expectation of privacy is reasonable," a court must consider "[t]he operational realities of the workplace" to determine if an employee's constitutional rights are implicated. 480 U. S., at 718. Second, where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation "for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id.,* at 725–726. JUSTICE SCALIA, concurring in the judgment, would have dispensed with the "operational realities" inquiry and concluded "that the offices of government employees . . . are [generally] covered by Fourth Amendment protections," *id.,* at 731, but he would also have held "that government searches to retrieve work-related materials or

to investigate violations of workplace rules—searches of the sort that are regarded as reasonable and normal in the private-employer context—do not violate the . . . Amendment," *id.,* at 732.  Pp. 7–9.

(b) Even assuming that Quon had a reasonable expectation of privacy in his text messages, the search was reasonable under both *O'Connor* approaches, the plurality's and JUSTICE SCALIA's.  Pp. 9–17.

(1) The Court does not resolve the parties' disagreement over Quon's privacy expectation.  Prudence counsels caution before the facts in this case are used to establish far-reaching premises that define the existence, and extent, of privacy expectations of employees using employer-provided communication devices.  Rapid changes in the dynamics of communication and information transmission are evident not just in the technology itself but in what society accepts as proper behavior.  At present, it is uncertain how workplace norms, and the law's treatment of them, will evolve.  Because it is therefore preferable to dispose of this case on narrower grounds, the Court assumes, *arguendo,* that: (1) Quon had a reasonable privacy expectation; (2) petitioners' review of the transcript constituted a Fourth Amendment search; and (3) the principles applicable to a government employer's search of an employee's physical office apply as well in the electronic sphere.  Pp. 9–12.

(2) Petitioners' warrantless review of Quon's pager transcript was reasonable under the *O'Connor* plurality's approach because it was motivated by a legitimate work-related purpose, and because it was not excessive in scope.  See 480 U. S., at 726.  There were "reasonable grounds for [finding it] necessary for a noninvestigatory work-related purpose," *ibid.,* in that Chief Scharf had ordered the audit to determine whether the City's contractual character limit was sufficient to meet the City's needs.  It was also "reasonably related to the objectives of the search," *ibid.,* because both the City and OPD had a legitimate interest in ensuring that employees were not being forced to pay out of their own pockets for work-related expenses, or, on the other hand, that the City was not paying for extensive personal communications.  Reviewing the transcripts was an efficient and expedient way to determine whether either of these factors caused Quon's overages.  And the review was also not "excessively intrusive." *Ibid.*  Although Quon had exceeded his monthly allotment a number of times, OPD requested transcripts for only August and September 2002 in order to obtain a large enough sample to decide the character limits' efficaciousness, and all the messages that Quon sent while off duty were redacted.  And from OPD's perspective, the fact that Quon likely had only a limited privacy expectation lessened the risk that the review would intrude on highly private details of Quon's life. Similarly, because the City had a legitimate reason for the search

and it was not excessively intrusive in light of that justification, the search would be "regarded as reasonable and normal in the private-employer context" and thereby satisfy the approach of JUSTICE SCALIA's concurrence, *id.,* at 732. Conversely, the Ninth Circuit's "least intrusive" means approach was inconsistent with controlling precedents. See*, e.g., Vernonia School Dist. 47J* v. *Acton*, 515 U. S. 646, 663. Pp. 12–16.

(c) Whether the other respondents can have a reasonable expectation of privacy in their text messages to Quon need not be resolved. They argue that because the search was unreasonable as to Quon, it was also unreasonable as to them, but they make no corollary argument that the search, if reasonable as to Quon, could nonetheless be unreasonable as to them. Given this litigating position and the Court's conclusion that the search was reasonable as to Quon, these other respondents cannot prevail. Pp. 16–17.

529 F. 3d 892, reversed and remanded.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, THOMAS, GINSBURG, BREYER, ALITO, and SOTOMAYOR, JJ., joined, and in which SCALIA, J., joined except for Part III–A. STEVENS, J., filed a concurring opinion. SCALIA, J., filed an opinion concurring in part and concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–1332

CITY OF ONTARIO, CALIFORNIA, ET AL., PETITIONERS *v.* JEFF QUON ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 17, 2010]

JUSTICE KENNEDY delivered the opinion of the Court.

This case involves the assertion by a government employer of the right, in circumstances to be described, to read text messages sent and received on a pager the employer owned and issued to an employee. The employee contends that the privacy of the messages is protected by the ban on "unreasonable searches and seizures" found in the Fourth Amendment to the United States Constitution, made applicable to the States by the Due Process Clause of the Fourteenth Amendment. *Mapp* v. *Ohio*, 367 U. S. 643 (1961). Though the case touches issues of far-reaching significance, the Court concludes it can be resolved by settled principles determining when a search is reasonable.

## I

### A

The City of Ontario (City) is a political subdivision of the State of California. The case arose out of incidents in 2001 and 2002 when respondent Jeff Quon was employed by the Ontario Police Department (OPD). He was a police ser-

geant and member of OPD's Special Weapons and Tactics
(SWAT) Team.  The City, OPD, and OPD's Chief, Lloyd
Scharf, are petitioners here.  As will be discussed, two
respondents share the last name Quon.  In this opinion
"Quon" refers to Jeff Quon, for the relevant events mostly
revolve around him.

In October 2001, the City acquired 20 alphanumeric
pagers capable of sending and receiving text messages.
Arch Wireless Operating Company provided wireless
service for the pagers.  Under the City's service contract
with Arch Wireless, each pager was allotted a limited
number of characters sent or received each month.  Usage
in excess of that amount would result in an additional fee.
The City issued pagers to Quon and other SWAT Team
members in order to help the SWAT Team mobilize and
respond to emergency situations.

Before acquiring the pagers, the City announced a
"Computer Usage, Internet and E-Mail Policy" (Computer
Policy) that applied to all employees.  Among other provi-
sions, it specified that the City "reserves the right to moni-
tor and log all network activity including e-mail and
Internet use, with or without notice.  Users should have no
expectation of privacy or confidentiality when using these
resources."  App. to Pet. for Cert. 152a.  In March 2000,
Quon signed a statement acknowledging that he had read
and understood the Computer Policy.

The Computer Policy did not apply, on its face, to text
messaging.  Text messages share similarities with e-mails,
but the two differ in an important way.  In this case, for
instance, an e-mail sent on a City computer was transmit-
ted through the City's own data servers, but a text mes-
sage sent on one of the City's pagers was transmitted
using wireless radio frequencies from an individual pager
to a receiving station owned by Arch Wireless.  It was
routed through Arch Wireless' computer network, where it
remained until the recipient's pager or cellular telephone

was ready to receive the message, at which point Arch Wireless transmitted the message from the transmitting station nearest to the recipient. After delivery, Arch Wireless retained a copy on its computer servers. The message did not pass through computers owned by the City.

Although the Computer Policy did not cover text messages by its explicit terms, the City made clear to employees, including Quon, that the City would treat text messages the same way as it treated e-mails. At an April 18, 2002, staff meeting at which Quon was present, Lieutenant Steven Duke, the OPD officer responsible for the City's contract with Arch Wireless, told officers that messages sent on the pagers "are considered e-mail messages. This means that [text] messages would fall under the City's policy as public information and [would be] eligible for auditing." App. 30. Duke's comments were put in writing in a memorandum sent on April 29, 2002, by Chief Scharf to Quon and other City personnel.

Within the first or second billing cycle after the pagers were distributed, Quon exceeded his monthly text message character allotment. Duke told Quon about the overage, and reminded him that messages sent on the pagers were "considered e-mail and could be audited." *Id.,* at 40. Duke said, however, that "it was not his intent to audit [an] employee's text messages to see if the overage [was] due to work related transmissions." *Ibid.* Duke suggested that Quon could reimburse the City for the overage fee rather than have Duke audit the messages. Quon wrote a check to the City for the overage. Duke offered the same arrangement to other employees who incurred overage fees.

Over the next few months, Quon exceeded his character limit three or four times. Each time he reimbursed the City. Quon and another officer again incurred overage fees for their pager usage in August 2002. At a meeting in October, Duke told Scharf that he had become "'tired of

being a bill collector.'"  *Id.,* at 91.  Scharf decided to de-
termine whether the existing character limit was too
low—that is, whether officers such as Quon were having to
pay fees for sending work-related messages—or if the
overages were for personal messages.  Scharf told Duke to
request transcripts of text messages sent in August and
September by Quon and the other employee who had
exceeded the character allowance.

At Duke's request, an administrative assistant em-
ployed by OPD contacted Arch Wireless.  After verifying
that the City was the subscriber on the accounts, Arch
Wireless provided the desired transcripts.  Duke reviewed
the transcripts and discovered that many of the messages
sent and received on Quon's pager were not work related,
and some were sexually explicit.  Duke reported his find-
ings to Scharf, who, along with Quon's immediate supervi-
sor, reviewed the transcripts himself.  After his review,
Scharf referred the matter to OPD's internal affairs divi-
sion for an investigation into whether Quon was violating
OPD rules by pursuing personal matters while on duty.

The officer in charge of the internal affairs review was
Sergeant Patrick McMahon.  Before conducting a review,
McMahon used Quon's work schedule to redact the tran-
scripts in order to eliminate any messages Quon sent
while off duty.  He then reviewed the content of the mes-
sages Quon sent during work hours.  McMahon's report
noted that Quon sent or received 456 messages during
work hours in the month of August 2002, of which no more
than 57 were work related; he sent as many as 80 mes-
sages during a single day at work; and on an average
workday, Quon sent or received 28 messages, of which
only 3 were related to police business.  The report con-
cluded that Quon had violated OPD rules.  Quon was
allegedly disciplined.

### B

Raising claims under Rev. Stat. §1979, 42 U. S. C. §1983; 18 U. S. C. §2701 *et seq.*, popularly known as the Stored Communications Act (SCA); and California law, Quon filed suit against petitioners in the United States District Court for the Central District of California. Arch Wireless and an individual not relevant here were also named as defendants. Quon was joined in his suit by another plaintiff who is not a party before this Court and by the other respondents, each of whom exchanged text messages with Quon during August and September 2002: Jerilyn Quon, Jeff Quon's then-wife, from whom he was separated; April Florio, an OPD employee with whom Jeff Quon was romantically involved; and Steve Trujillo, another member of the OPD SWAT Team. Among the allegations in the complaint was that petitioners violated respondents' Fourth Amendment rights and the SCA by obtaining and reviewing the transcript of Jeff Quon's pager messages and that Arch Wireless had violated the SCA by turning over the transcript to the City.

The parties filed cross-motions for summary judgment. The District Court granted Arch Wireless' motion for summary judgment on the SCA claim but denied petitioners' motion for summary judgment on the Fourth Amendment claims. *Quon* v. *Arch Wireless Operating Co.,* 445 F. Supp. 2d 1116 (CD Cal. 2006). Relying on the plurality opinion in *O'Connor* v. *Ortega*, 480 U. S. 709, 711 (1987), the District Court determined that Quon had a reasonable expectation of privacy in the content of his text messages. Whether the audit of the text messages was nonetheless reasonable, the District Court concluded, turned on Chief Scharf's intent: "[I]f the purpose for the audit was to determine if Quon was using his pager to 'play games' and 'waste time,' then the audit was not constitutionally reasonable"; but if the audit's purpose "was to determine the efficacy of the existing character

limits to ensure that officers were not paying hidden work-related costs, . . . no constitutional violation occurred." 445 F. Supp. 2d, at 1146.

The District Court held a jury trial to determine the purpose of the audit. The jury concluded that Scharf ordered the audit to determine the efficacy of the character limits. The District Court accordingly held that petitioners did not violate the Fourth Amendment. It entered judgment in their favor.

The United States Court of Appeals for the Ninth Circuit reversed in part. 529 F. 3d 892 (2008). The panel agreed with the District Court that Jeff Quon had a reasonable expectation of privacy in his text messages but disagreed with the District Court about whether the search was reasonable. Even though the search was conducted for "a legitimate work-related rationale," the Court of Appeals concluded, it "was not reasonable in scope." *Id.,* at 908. The panel disagreed with the District Court's observation that "there were no less-intrusive means" that Chief Scharf could have used "to verify the efficacy of the 25,000 character limit . . . without intruding on [respondents'] Fourth Amendment rights." *Id.,* at 908–909. The opinion pointed to a "host of simple ways" that the chief could have used instead of the audit, such as warning Quon at the beginning of the month that his future messages would be audited, or asking Quon himself to redact the transcript of his messages. *Id.,* at 909. The Court of Appeals further concluded that Arch Wireless had violated the SCA by turning over the transcript to the City.

The Ninth Circuit denied a petition for rehearing en banc. *Quon* v. *Arch Wireless Operating Co.,* 554 F. 3d 769 (2009). Judge Ikuta, joined by six other Circuit Judges, dissented. *Id.,* at 774–779. Judge Wardlaw concurred in the denial of rehearing, defending the panel's opinion against the dissent. *Id.,* at 769–774.

This Court granted the petition for certiorari filed by the City, OPD, and Chief Scharf challenging the Court of Appeals' holding that they violated the Fourth Amendment. 558 U. S. \_\_\_ (2009). The petition for certiorari filed by Arch Wireless challenging the Ninth Circuit's ruling that Arch Wireless violated the SCA was denied. *USA Mobility Wireless, Inc.* v. *Quon,* 558 U. S. \_\_\_ (2009).

## II

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." It is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations. *Camara* v. *Municipal Court of City and County of San Francisco*, 387 U. S. 523, 530 (1967). "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government," without regard to whether the government actor is investigating crime or performing another function. *Skinner* v. *Railway Labor Executives' Assn.*, 489 U. S. 602, 613–614 (1989). The Fourth Amendment applies as well when the Government acts in its capacity as an employer. *Treasury Employees* v. *Von Raab*, 489 U. S. 656, 665 (1989).

The Court discussed this principle in *O'Connor.* There a physician employed by a state hospital alleged that hospital officials investigating workplace misconduct had violated his Fourth Amendment rights by searching his office and seizing personal items from his desk and filing cabinet. All Members of the Court agreed with the general principle that "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." 480 U. S., at 717 (plurality opinion); see also *id.,* at 731 (SCALIA, J., concurring in judgment); *id.,* at 737 (Blackmun, J., dissenting). A major-

ity of the Court further agreed that "'special needs, beyond the normal need for law enforcement,'" make the warrant and probable-cause requirement impracticable for government employers. *Id.,* at 725 (plurality opinion) (quoting *New Jersey* v. *T. L. O.*, 469 U. S. 325, 351 (1985) (Blackmun, J., concurring in judgment); 480 U. S*.,* at 732 (opinion of SCALIA, J.) (quoting same).

The *O'Connor* Court did disagree on the proper analytical framework for Fourth Amendment claims against government employers. A four-Justice plurality concluded that the correct analysis has two steps. First, because "some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable," *id.,* at 718, a court must consider "[t]he operational realities of the workplace" in order to determine whether an employee's Fourth Amendment rights are implicated, *id.,* at 717. On this view, "the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *Id.,* at 718. Next, where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation "for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id.,* at 725–726.

JUSTICE SCALIA, concurring in the judgment, outlined a different approach. His opinion would have dispensed with an inquiry into "operational realities" and would conclude "that the offices of government employees . . . are covered by Fourth Amendment protections as a general matter." *Id.,* at 731. But he would also have held "that government searches to retrieve work-related materials or to investigate violations of workplace rules—searches of the sort that are regarded as reasonable and normal in the private-employer context—do not violate the Fourth Amendment." *Id.,* at 732.

Later, in the *Von Raab* decision, the Court explained that "operational realities" could diminish an employee's privacy expectations, and that this diminution could be taken into consideration when assessing the reasonableness of a workplace search. 489 U. S., at 671. In the two decades since *O'Connor*, however, the threshold test for determining the scope of an employee's Fourth Amendment rights has not been clarified further. Here, though they disagree on whether Quon had a reasonable expectation of privacy, both petitioners and respondents start from the premise that the *O'Connor* plurality controls. See Brief for Petitioners 22–28; Brief for Respondents 25–32. It is not necessary to resolve whether that premise is correct. The case can be decided by determining that the search was reasonable even assuming Quon had a reasonable expectation of privacy. The two *O'Connor* approaches—the plurality's and JUSTICE SCALIA's—therefore lead to the same result here.

## III

### A

Before turning to the reasonableness of the search, it is instructive to note the parties' disagreement over whether Quon had a reasonable expectation of privacy. The record does establish that OPD, at the outset, made it clear that pager messages were not considered private. The City's Computer Policy stated that "[u]sers should have no expectation of privacy or confidentiality when using" City computers. App. to Pet. for Cert. 152a. Chief Scharf's memo and Duke's statements made clear that this official policy extended to text messaging. The disagreement, at least as respondents see the case, is over whether Duke's later statements overrode the official policy. Respondents contend that because Duke told Quon that an audit would be unnecessary if Quon paid for the overage, Quon reasonably could expect that the contents of his messages

would remain private.

At this point, were we to assume that inquiry into "operational realities" were called for, compare *O'Connor*, 480 U. S., at 717 (plurality opinion), with *id.,* at 730–731 (opinion of SCALIA, J.); see also *id.,* at 737–738 (Blackmun, J., dissenting), it would be necessary to ask whether Duke's statements could be taken as announcing a change in OPD policy, and if so, whether he had, in fact or appearance, the authority to make such a change and to guarantee the privacy of text messaging. It would also be necessary to consider whether a review of messages sent on police pagers, particularly those sent while officers are on duty, might be justified for other reasons, including performance evaluations, litigation concerning the lawfulness of police actions, and perhaps compliance with state open records laws. See Brief for Petitioners 35–40 (citing Cal. Public Records Act, Cal. Govt. Code Ann. §6250 *et seq.* (West 2008)). These matters would all bear on the legitimacy of an employee's privacy expectation.

The Court must proceed with care when considering the whole concept of privacy expectations in communications made on electronic equipment owned by a government employer. The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear. See, *e.g., Olmstead* v. *United States*, 277 U. S. 438 (1928), overruled by *Katz* v. *United States*, 389 U. S. 347, 353 (1967). In *Katz*, the Court relied on its own knowledge and experience to conclude that there is a reasonable expectation of privacy in a telephone booth. See *id.,* at 360–361 (Harlan, J., concurring). It is not so clear that courts at present are on so sure a ground. Prudence counsels caution before the facts in the instant case are used to establish far-reaching premises that define the existence, and extent, of privacy expectations enjoyed by employees when using employer-provided communication devices.

Rapid changes in the dynamics of communication and information transmission are evident not just in the technology itself but in what society accepts as proper behavior. As one *amici* brief notes, many employers expect or at least tolerate personal use of such equipment by employees because it often increases worker efficiency. See Brief for Electronic Frontier Foundation et al. 16–20. Another *amicus* points out that the law is beginning to respond to these developments, as some States have recently passed statutes requiring employers to notify employees when monitoring their electronic communications. See Brief for New York Intellectual Property Law Association 22 (citing Del. Code Ann., Tit. 19, §705 (2005); Conn. Gen. Stat. Ann. §31–48d (West 2003)). At present, it is uncertain how workplace norms, and the law's treatment of them, will evolve.

Even if the Court were certain that the *O'Connor* plurality's approach were the right one, the Court would have difficulty predicting how employees' privacy expectations will be shaped by those changes or the degree to which society will be prepared to recognize those expectations as reasonable. See 480 U. S., at 715. Cell phone and text message communications are so pervasive that some persons may consider them to be essential means or necessary instruments for self-expression, even self-identification. That might strengthen the case for an expectation of privacy. On the other hand, the ubiquity of those devices has made them generally affordable, so one could counter that employees who need cell phones or similar devices for personal matters can purchase and pay for their own. And employer policies concerning communications will of course shape the reasonable expectations of their employees, especially to the extent that such policies are clearly communicated.

A broad holding concerning employees' privacy expectations vis-à-vis employer-provided technological equipment

might have implications for future cases that cannot be predicted.  It is preferable to dispose of this case on narrower grounds.  For present purposes we assume several propositions *arguendo:* First, Quon had a reasonable expectation of privacy in the text messages sent on the pager provided to him by the City; second, petitioners' review of the transcript constituted a search within the meaning of the Fourth Amendment; and third, the principles applicable to a government employer's search of an employee's physical office apply with at least the same force when the employer intrudes on the employee's privacy in the electronic sphere.

B

Even if Quon had a reasonable expectation of privacy in his text messages, petitioners did not necessarily violate the Fourth Amendment by obtaining and reviewing the transcripts.  Although as a general matter, warrantless searches "are *per se* unreasonable under the Fourth Amendment," there are "a few specifically established and well-delineated exceptions" to that general rule.  *Katz, supra,* at 357.  The Court has held that the "'special needs'" of the workplace justify one such exception. *O'Connor,* 480 U. S., at 725 (plurality opinion); *id.,* at 732 (SCALIA, J., concurring in judgment); *Von Raab,* 489 U. S., at 666–667.

Under the approach of the *O'Connor* plurality, when conducted for a "noninvestigatory, work-related purpos[e]" or for the "investigatio[n] of work-related misconduct," a government employer's warrantless search is reasonable if it is "'justified at its inception'" and if "'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of'" the circumstances giving rise to the search.  480 U. S., at 725–726.  The search here satisfied the standard of the *O'Connor* plurality and was reasonable under that ap-

proach.

The search was justified at its inception because there were "reasonable grounds for suspecting that the search [was] necessary for a noninvestigatory work-related purpose." *Id.,* at 726. As a jury found, Chief Scharf ordered the search in order to determine whether the character limit on the City's contract with Arch Wireless was sufficient to meet the City's needs. This was, as the Ninth Circuit noted, a "legitimate work-related rationale." 529 F. 3d, at 908. The City and OPD had a legitimate interest in ensuring that employees were not being forced to pay out of their own pockets for work-related expenses, or on the other hand that the City was not paying for extensive personal communications.

As for the scope of the search, reviewing the transcripts was reasonable because it was an efficient and expedient way to determine whether Quon's overages were the result of work-related messaging or personal use. The review was also not "'excessively intrusive.'" *O'Connor, supra,* at 726 (plurality opinion). Although Quon had gone over his monthly allotment a number of times, OPD requested transcripts for only the months of August and September 2002. While it may have been reasonable as well for OPD to review transcripts of all the months in which Quon exceeded his allowance, it was certainly reasonable for OPD to review messages for just two months in order to obtain a large enough sample to decide whether the character limits were efficacious. And it is worth noting that during his internal affairs investigation, McMahon redacted all messages Quon sent while off duty, a measure which reduced the intrusiveness of any further review of the transcripts.

Furthermore, and again on the assumption that Quon had a reasonable expectation of privacy in the contents of his messages, the extent of an expectation is relevant to assessing whether the search was too intrusive. See *Von*

*Raab, supra,* at 671; cf. *Vernonia School Dist. 47J* v. *Acton,* 515 U. S. 646, 654–657 (1995). Even if he could assume some level of privacy would inhere in his messages, it would not have been reasonable for Quon to conclude that his messages were in all circumstances immune from scrutiny. Quon was told that his messages were subject to auditing. As a law enforcement officer, he would or should have known that his actions were likely to come under legal scrutiny, and that this might entail an analysis of his on-the-job communications. Under the circumstances, a reasonable employee would be aware that sound management principles might require the audit of messages to determine whether the pager was being appropriately used. Given that the City issued the pagers to Quon and other SWAT Team members in order to help them more quickly respond to crises—and given that Quon had received no assurances of privacy—Quon could have anticipated that it might be necessary for the City to audit pager messages to assess the SWAT Team's performance in particular emergency situations.

From OPD's perspective, the fact that Quon likely had only a limited privacy expectation, with boundaries that we need not here explore, lessened the risk that the review would intrude on highly private details of Quon's life. OPD's audit of messages on Quon's employer-provided pager was not nearly as intrusive as a search of his personal e-mail account or pager, or a wiretap on his home phone line, would have been. That the search did reveal intimate details of Quon's life does not make it unreasonable, for under the circumstances a reasonable employer would not expect that such a review would intrude on such matters. The search was permissible in its scope.

The Court of Appeals erred in finding the search unreasonable. It pointed to a "host of simple ways to verify the efficacy of the 25,000 character limit . . . without intruding on [respondents'] Fourth Amendment rights." 529 F. 3d,

at 909. The panel suggested that Scharf "could have warned Quon that for the month of September he was forbidden from using his pager for personal communications, and that the contents of all his messages would be reviewed to ensure the pager was used only for work-related purposes during that time frame. Alternatively, if [OPD] wanted to review past usage, it could have asked Quon to count the characters himself, or asked him to redact personal messages and grant permission to [OPD] to review the redacted transcript." *Ibid.*

This approach was inconsistent with controlling precedents. This Court has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment." *Vernonia, supra,* at 663; see also, *e.g.*, *Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty.* v. *Earls*, 536 U. S. 822, 837 (2002); *Illinois* v. *Lafayette*, 462 U. S. 640, 647 (1983). That rationale "could raise insuperable barriers to the exercise of virtually all search-and-seizure powers," *United States* v. *Martinez-Fuerte*, 428 U. S. 543, 557, n. 12 (1976), because "judges engaged in *post hoc* evaluations of government conduct can almost always imagine some alternative means by which the objectives of the government might have been accomplished," *Skinner*, 489 U. S., at 629, n. 9 (internal quotation marks and brackets omitted). The analytic errors of the Court of Appeals in this case illustrate the necessity of this principle. Even assuming there were ways that OPD could have performed the search that would have been less intrusive, it does not follow that the search as conducted was unreasonable.

Respondents argue that the search was *per se* unreasonable in light of the Court of Appeals' conclusion that Arch Wireless violated the SCA by giving the City the transcripts of Quon's text messages. The merits of the SCA claim are not before us. But even if the Court of Appeals was correct to conclude that the SCA forbade

Arch Wireless from turning over the transcripts, it does not follow that petitioners' actions were unreasonable. Respondents point to no authority for the proposition that the existence of statutory protection renders a search *per se* unreasonable under the Fourth Amendment. And the precedents counsel otherwise. See *Virginia* v. *Moore*, 553 U. S. 164, 168 (2008) (search incident to an arrest that was illegal under state law was reasonable); *California* v. *Greenwood*, 486 U. S. 35, 43 (1988) (rejecting argument that if state law forbade police search of individual's garbage the search would violate the Fourth Amendment). Furthermore, respondents do not maintain that any OPD employee either violated the law him- or herself or knew or should have known that Arch Wireless, by turning over the transcript, would have violated the law. The otherwise reasonable search by OPD is not rendered unreasonable by the assumption that Arch Wireless violated the SCA by turning over the transcripts.

Because the search was motivated by a legitimate work-related purpose, and because it was not excessive in scope, the search was reasonable under the approach of the *O'Connor* plurality. 480 U. S., at 726. For these same reasons—that the employer had a legitimate reason for the search, and that the search was not excessively intrusive in light of that justification—the Court also concludes that the search would be "regarded as reasonable and normal in the private-employer context" and would satisfy the approach of JUSTICE SCALIA's concurrence. *Id.,* at 732. The search was reasonable, and the Court of Appeals erred by holding to the contrary. Petitioners did not violate Quon's Fourth Amendment rights.

C

Finally, the Court must consider whether the search violated the Fourth Amendment rights of Jerilyn Quon, Florio, and Trujillo, the respondents who sent text mes-

sages to Jeff Quon. Petitioners and respondents disagree whether a sender of a text message can have a reasonable expectation of privacy in a message he knowingly sends to someone's employer-provided pager. It is not necessary to resolve this question in order to dispose of the case, however. Respondents argue that because "the search was unreasonable as to Sergeant Quon, it was also unreasonable as to his correspondents." Brief for Respondents 60 (some capitalization omitted; boldface deleted). They make no corollary argument that the search, if reasonable as to Quon, could nonetheless be unreasonable as to Quon's correspondents. See *id.,* at 65–66. In light of this litigating position and the Court's conclusion that the search was reasonable as to Jeff Quon, it necessarily follows that these other respondents cannot prevail.

\* \* \*

Because the search was reasonable, petitioners did not violate respondents' Fourth Amendment rights, and the court below erred by concluding otherwise. The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–1332

_____

CITY OF ONTARIO, CALIFORNIA, ET AL.,
PETITIONERS *v.* JEFF QUON ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 17, 2010]

JUSTICE STEVENS, concurring.

Although I join the Court's opinion in full, I write separately to highlight that the Court has sensibly declined to resolve whether the plurality opinion in *O'Connor* v. *Ortega*, 480 U. S. 709 (1987), provides the correct approach to determining an employee's reasonable expectation of privacy. See *ante*, at 9. Justice Blackmun, writing for the four dissenting Justices in *O'Connor*, agreed with JUSTICE SCALIA that an employee enjoys a reasonable expectation of privacy in his office. 480 U. S., at 737. But he advocated a third approach to the reasonable expectation of privacy inquiry, separate from those proposed by the *O'Connor* plurality and by JUSTICE SCALIA, see *ante*, at 8. Recognizing that it is particularly important to safeguard "a public employee's expectation of privacy in the workplace" in light of the "reality of work in modern time," 480 U. S., at 739, which lacks "tidy distinctions" between workplace and private activities, *ibid.*, Justice Blackmun argued that "the precise extent of an employee's expectation of privacy often turns on the nature of the search," *id.,* at 738. And he emphasized that courts should determine this expectation in light of the specific facts of each particular search, rather than by announcing a categorical standard. See *id.*, at 741.

For the reasons stated at page 13 of the Court's opinion,

it is clear that respondent Jeff Quon, as a law enforcement officer who served on a SWAT Team, should have understood that all of his work-related actions—including all of his communications on his official pager—were likely to be subject to public and legal scrutiny.  He therefore had only a limited expectation of privacy in relation to this particular audit of his pager messages.  Whether one applies the reasoning from Justice O'Connor's opinion, JUSTICE SCALIA's concurrence, or Justice Blackmun's dissent* in *O'Connor*, the result is the same: The judgment of the Court of Appeals in this case must be reversed.

––––––––––

*I do not contend that Justice Blackmun's opinion is controlling under *Marks* v. *United States*, 430 U. S. 188, 193 (1977), but neither is his approach to evaluating a reasonable expectation of privacy foreclosed by *O'Connor*.  Indeed, his approach to that inquiry led to the conclusion, shared by JUSTICE SCALIA but not adopted by the *O'Connor* plurality, that an employee had a reasonable expectation of privacy in his office. See *O'Connor* v. *Ortega*, 480 U. S. 709, 718 (1987) (plurality opinion).  But Justice Blackmun would have applied the Fourth Amendment's warrant and probable-cause requirements to workplace investigatory searches, *id.*, at 732 (dissenting opinion), whereas a majority of the Court rejected that view, see *id.*, at 722, 725 (plurality opinion); *id.*, at 732 (SCALIA, J., concurring in judgment).  It was that analysis— regarding the proper standard for evaluating a search when an employee has a reasonable expectation of privacy—that produced the opposite result in the case.  This case does not implicate that debate because it does not involve an investigatory search.  The jury concluded that the purpose of the audit was to determine whether the character limits were sufficient for work-related messages.  See *ante*, at 6.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–1332

_____

## CITY OF ONTARIO, CALIFORNIA, ET AL., PETITIONERS *v.* JEFF QUON ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 17, 2010]

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I join the Court's opinion except for Part III–A. I continue to believe that the "operational realities" rubric for determining the Fourth Amendment's application to public employees invented by the plurality in *O'Connor* v. *Ortega*, 480 U. S. 709, 717 (1987), is standardless and unsupported. *Id.*, at 729–732 (SCALIA, J., concurring in judgment). In this case, the proper threshold inquiry should be not whether the Fourth Amendment applies to messages on *public* employees' employer-issued pagers, but whether it applies *in general* to such messages on employer-issued pagers. See *id.*, at 731.

Here, however, there is no need to answer that threshold question. Even accepting at face value Quon's and his co-plaintiffs' claims that the Fourth Amendment applies to their messages, the city's search was reasonable, and thus did not violate the Amendment. See *id.*, at 726 (plurality opinion); *id.*, at 732 (SCALIA, J., concurring in judgment). Since it is unnecessary to decide whether the Fourth Amendment applies, it is unnecessary to resolve which approach in *O'Connor* controls: the plurality's or mine.*

_____

*Despite his disclaimer, *ante*, at 2, n. (concurring opinion), JUSTICE STEVENS' concurrence implies, *ante*, at 1–2, that it is also an open

That should end the matter.

The Court concedes as much, *ante*, at 9, 12–17, yet it inexplicably interrupts its analysis with a recitation of the parties' arguments concerning, and an excursus on the complexity and consequences of answering, that admittedly irrelevant threshold question, *ante*, at 9–12. That discussion is unnecessary. (To whom do we owe an *additional* explanation for declining to decide an issue, once we have explained that it makes no difference?) It also seems to me exaggerated. Applying the Fourth Amendment to new technologies may sometimes be difficult, but when it is necessary to decide a case we have no choice. The Court's implication, *ante*, at 10, that where electronic privacy is concerned we should decide less than we otherwise would (that is, less than the principle of law necessary to resolve the case and guide private action)—or that we should hedge our bets by concocting case-specific standards or issuing opaque opinions—is in my view indefensible. The-times-they-are-a-changin' is a feeble excuse for disregard of duty.

Worse still, the digression is self-defeating. Despite the Court's insistence that it is agnostic about the proper test, lower courts will likely read the Court's self-described "instructive" expatiation on how the *O'Connor* plurality's approach would apply here (if it applied), *ante*, at 9–11, as a heavy-handed hint about how *they* should proceed. Litigants will do likewise, using the threshold question whether the Fourth Amendment is even implicated as a

—————

question whether the approach advocated by Justice Blackmun in his *dissent* in *O'Connor* is the proper standard. There is room for reasonable debate as to which of the two approaches advocated by Justices whose votes supported the judgment in *O'Connor*—the plurality's and mine—is controlling under *Marks* v. *United States*, 430 U. S. 188, 193 (1977). But unless *O'Connor* is overruled, it is assuredly false that a test that would have produced the *opposite* result in that case is still in the running.

basis for bombarding lower courts with arguments about employer policies, how they were communicated, and whether they were authorized, as well as the latest trends in employees' use of electronic media. In short, in saying why it is not saying more, the Court says much more than it should.

The Court's inadvertent boosting of the *O'Connor* plurality's standard is all the more ironic because, in fleshing out its fears that applying that test to new technologies will be too hard, the Court underscores the unworkability of that standard. Any rule that requires evaluating whether a given gadget is a "necessary instrumen[t] for self-expression, even self-identification," on top of assessing the degree to which "the law's treatment of [workplace norms has] evolve[d]," *ante*, at 11, is (to put it mildly) unlikely to yield objective answers.

I concur in the Court's judgment.