PATIENCE DRAKE ROGGENSACK, J.
¶ 130. {concurring). I agree with the lead opinion's conclusions that law enforcement acted reasonably under the Fourth Amendment due to exigent circumstances and that Subdiaz-Osorio failed to unequivocally invoke his right to counsel. I write in concurrence, however, because I cannot endorse the lead opinion's discussion of whether a search occurred.[1]
¶ 131. The lead opinion says that it does not decide whether law enforcement's activities constituted a search within the meaning of the Fourth Amendment.[2] It does so in order "to avoid delivering a broad pronouncement about reasonable expectations of privacy in the rapidly developing field of wireless technology."[3] While I wholeheartedly agree with the principles of judicial restraint the lead opinion espouses, I write separately because I believe the lead opinion has "elaborat[ed] too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear."[4] City of Ontario, Cal. v. Quon, 560 U.S. 746, 759 (2010).
*110 ¶ 132. Specifically, while the lead opinion purports to assume without deciding "that people have a reasonable expectation of privacy in their cell phone location data and that when police track a cell phone's location, they are conducting a search under the Fourth Amendment," it nonetheless applies Katz's two-part test for determining whether a search occurred.[5] See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). In doing so, it seems to decide several points of law that are unrelated to its conclusion, which is grounded in the exigent circumstances exception to the Fourth Amendment's warrant requirement. Were I writing for the majority of the court, I would write more narrowly, avoiding the conclusions above and also those mentioned below.
¶ 133. First, the lead opinion concludes that the Subdiaz-Osorio's Sprint policy suffers from multiple legal shortcomings. After noting "piecemeal definitions and vague terminology" in that contract, it concludes that "[i]t is possible that a customer would read th[e] Policy and understand that his cell phone may be tracked at all times, but that is not the only possible reading."[6] Whether a contract is capable of more than one reasonable interpretation, and is therefore ambiguous, is a question of law that may have important legal ramifications.[7] I would therefore refrain from interpreting the contract when doing so is unnecessary to our holding.
*111 ¶ 134. The lead opinion further states that even if the cell phone contract were clear, "[i]t does not necessarily follow that law enforcement may lawfully seek and obtain the information without a court order or without satisfying the exigent circumstances exception."[8] It concludes that "a customer might still reasonably assume that the cell phone company will disclose information only when presented with a valid court order."[9]
¶ 135. This pronouncement calls into serious question the ability of a defendant's voluntary disclosure of information to shape the defendant's expectation of privacy, and therefore questions the continued viability of the third party disclosure doctrine itself, under which a defendant "typically retains no . . . constitutional reasonable expectation of privacy in information conveyed to a third party." ABA Standards for Criminal Justice, Law Enforcement Access to Third Party Records, 6 (3d ed. 2013). This is a developing issue that I believe is better evaluated in a decision that requires us to address third party disclosures. See United States v. Jones, 132 S. Ct. 945, 957 (2012) (Sotomayor, J., concurring) ("it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties").
¶ 136. Finally, the lead opinion notes that law enforcement will not know, in each instance, whether a suspect's cell phone contract contains language similar *112 to the Sprint contract in the present case.[10] It then expresses concern that law enforcement will "track a cell phone without a warrant, understanding that if the policy does not alert the suspect that he may be tracked, the search will violate the Fourth Amendment."[11] This will, in turn, "invite [] law enforcement to be complacent in its requests for tracking," according to the lead opinion.[12] As distasteful as that idea may be, I would not evaluate cell phone contract rationales that do not drive our decision.
¶ 137. In sum, while the lead opinion "believe[s] it prudent to heed the cautionary advice of the Supreme Court" and to decide the case on the narrowest grounds possible, its wide-ranging discussion fails to implement that directive.[13] Instead, its decision all but forecloses argument "that a search under the Fourth Amendment depends on the specific language in an individual's cell phone policy" or that the defendant's disclosure of information to a third party shapes his expectation of privacy.[14] Because I do not wish to decide whether a search occurred in this case, or any of the issues that are unnecessary to that inquiry, I do not join the lead opinion, and respectfully concur in its mandate.
¶ 138. I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence.

 Lead op., ¶¶ 48-68.

 Id., ¶¶ 9, 64, 68.

 Id., ¶ 9.

 As an example of the changing landscape, I note that on April 23, 2014, 2013 Wis. Act 375 was enacted as Wis. Stat. § 968.373 and now governs "tracking the location of a cellular telephone."

 Lead op., ¶¶ 9, 51-68.

 Id, ¶ 56, 58.

 Most commonly, if a statute is ambiguous, meaning "it is capable of being understood by reasonably well-informed persons in two or more senses," we may turn to extrinsic sources, such as legislative history, to aid in our interpretation of a statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶¶ 47, 50, 271 Wis. 2d 633, 681 N.W.2d 110. In the *111 context of contract interpretation, the ambiguous term may be construed against its drafter. Folkman v. Quamme, 2003 WI 116, ¶ 20, 264 Wis. 2d 617, 665 N.W.2d 857.

 Lead op., ¶ 60.

 Id.

 Id., ¶ 61.

Id.

 Id., ¶ 63.

 Id, ¶ 64.

 Id, ¶ 60-61.