**Aaron L. MINTZ, an individual, Plaintiff,**

**v.**

**MARK BARTELSTEIN & ASSOCIATES, INC., d/b/a Priority Sports & Entertainment, and Mark Bartelstein, an individual, Defendants.**

**And Related Counterclaims.**

**No. CV 12–02554 SVW (SSx).**

United States District Court, C.D. California.

Aug. 14, 2012.

---

Anthony J. Oncidi, Robert H. Horn, Proskauer Rose LLP, Los Angeles, CA,

Christopher L. Williams, Proskauer Rose LLP, New Orleans, LA, for Plaintiff.

Adrian M. Pruetz, G. Jill Basinger, Lauren M. Gibbs, Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP, Los Angeles, CA, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO QUASH SUBPOENA TO AT & T, FOR A PROTECTIVE ORDER, AND FOR SANCTIONS (Docket No. 23)

SUZANNE H. SEGAL, United States Magistrate Judge.

## I.

## INTRODUCTION

On March 23, 2012, Aaron L. Mintz ("Plaintiff") filed a Complaint for Declaratory Relief (the "Complaint") against Mark Bartelstein & Associates, Inc., d/b/a Priority Sports & Entertainment ("Defendant" or "Priority Sports").[1] Plaintiff is a sports agent who previously worked for Defendant for eleven years before resigning on March 23, 2012, and accepting a position with a competitor. (Complaint at 1). Plaintiff seeks a declaratory judgment stating that his former contract, which contains a post-employment restrictive covenant, is unenforceable as a violation of California's public policy. (*Id.*).

On April 6, 2012, Plaintiff filed a Complaint for Damages and Injunctive Relief (the "Second Complaint") against Defendant and Mark Bartelstein (collectively, "Defendants") in Case No. CV 12–03055 SVW (SSx). In the Second Complaint, Plaintiff alleges, *inter alia*, that Defendants illegally accessed his personal email account, (Second Complaint at 4–5), and

---

1. The Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. (Complaint at 2–3).

seeks damages as well as injunctive relief. (*Id.* at 16).

On April 17, 2012, Defendants filed a Counterclaim (the "Counterclaim") against Plaintiff in Case No. CV 12–02554 SVW (SSx). On April 25, 2012, Defendants filed the same Counterclaim against Plaintiff in Case No. CV 12–03055 SVW (SSx). In the Counterclaim, Defendants allege, *inter alia,* that Plaintiff misappropriated trade secrets and conspired with Plaintiff's future employer (a competitor sports agency) to steal clients. (Counterclaim at 9–14).

On June 18, 2012, the District Judge consolidated Case No. CV 12–03055 SVW (SSx) with Case No. CV 12–02554 SVW (SSx) and directed that all subsequent filings be made in the lead case, Case No. CV 12–02554 SVW (SSx).

On June 26, 2012, Plaintiff filed a Motion To Quash Subpoena To AT & T, For A Protective Order, And For Sanctions (the "Motion"), as well as a Joint Stipulation Regarding The Motion (the "Joint Stip."). On July 3, 2012, Plaintiff filed a Supplemental Memorandum In Support Of The Motion (the "Plaintiff's Supp. Memo."), as well as Objections To The Declaration Of Lauren M. Gibbs Filed In Opposition To The Motion (the "Objections").[2] Also on July 3, 2012, Defendants filed a Supplemental Memorandum In Opposition To The Motion (the "Defendants' Supp. Memo.").

In the Motion, Plaintiff seeks to quash a subpoena served on AT & T by Defendants because the subpoena is overbroad and seeks confidential information. (Joint Stip. at 2–4). The subpoena seeks information related to telephone calls and text messages made or received by an AT & T account bearing Plaintiff's name. (*Id.,* Declaration of Robert Horn ("Horn Decl."), Exh. A at 31–32). Defendants contend that this information is necessary to prove their counterclaims that Plaintiff made false and defamatory statements about Priority Sports and improperly solicited Priority Sports' clients while still employed at Priority Sports. (*Id.* at 5). Defendants further contend that Plaintiff has no expectation of privacy in information related to the AT & T account because Priority Sports owned the account and paid all the bills. (*Id.* at 4–5). Finally, Defendants contend that Plaintiff expressly waived any privacy rights in the AT & T account because he signed an employment manual (the "Employment Manual") stating that any personal information on company telephone systems shall be the property of Priority Sports and that Priority Sports has the right to review all e-mail, voice mail, and telephone messages. (*Id.* at 5).

On July 17, 2012, the Court held a hearing to consider the Motion. At the hearing, Plaintiff's counsel objected to Defendants' assertion that, based on the Employment Manual, Plaintiff waived any privacy interest he had in the AT & T account because Defendants failed to provide evidence demonstrating that Plaintiff actually signed or had notice of the Employment Manual. Defendants' counsel stated that she believed Plaintiff had signed the Employment Manual, but did not know definitively. Thus, the Court directed the parties to supplement the record to clarify whether Plaintiff signed the Employment Manual, and if not, whether he had notice of it. On July 24, 2012, Defendants filed a Supple-

---

2. In the Objections to the Gibbs declaration, Plaintiff contends that Defendants failed to properly authenticate and lay the foundation for the AT & T telephone bills and the Priority Sports Employment Manual submitted as exhibits. (Objections at 1). The Court concludes that these objections are moot because the parties subsequently submitted without objection additional declarations to supplement the factual record, as discussed below. Accordingly, the Objections are overruled.

mental Declaration Of Mark Goldstick In Opposition To The Motion (the "Goldstick Decl."), as well as a Supplemental Declaration Of Lauren Gibbs In Opposition To The Motion (the "Gibbs Decl."). On that same date, July 24, 2012, Plaintiff filed a Declaration of Aaron L. Mintz In Support Of The Motion (the "Mintz Decl."). The Court has considered the parties' briefs, their statements at the hearing, and the supplemental declarations. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion.

## II.

## DISCUSSION

### A. *The Stored Communications Act Governs Disclosure Of The Content Of Any Messages By AT & T*

The Stored Communications Act ("SCA") generally prohibits " 'providers' of communication services from divulging private communications to certain entities and/or individuals." *Quon v. Arch Wireless Operating Co., Inc.,* 529 F.3d 892, 900 (9th Cir.2008), *rev'd on other grounds by City of Ontario, Cal. v. Quon,* —— U.S. ——, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010) (reversing on Fourth Amendment grounds only); *see also City of Ontario,* 130 S.Ct. at 2627 ("The petition for certiorari filed by Arch Wireless challenging the Ninth Circuit's ruling that Arch Wireless violated the SCA was denied."). The SCA provides different prohibitions depending on whether the communications provider is classified as an "electronic communication service" or a "remote computing service." 18 U.S.C. § 2702(a). The Ninth Circuit has held that wireless communications providers such as AT & T are properly classi-

fied as an "electronic communication service." *Quon,* 529 F.3d at 901 (holding that text messaging pager services provided by Arch Wireless constitute an "electronic communication service" and not a "remote computing service"); *see also* S.Rep. No. 99-541, at 14 (1986), 1986 U.S.C.C.A.N. 3555, 3568 ("Existing telephone companies and electronic mail companies are providers of electronic communications services.").

Thus, AT & T must comply with the rules applicable to electronic communication services and "shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service," 18 U.S.C. § 2702(a)(1), unless one of the specifically enumerated exceptions in 18 U.S.C. § 2702(b) apply. 18 U.S.C. § 2702(b) contains a number of exceptions which do not apply here, such as the exceptions for law enforcement purposes. 18 U.S.C. § 2702(b)(6)-(8). The relevant exceptions include 18 U.S.C. § 2702(b)(1), which permits the disclosure of the contents of a communication "to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." Additionally, 18 U.S.C. § 2702(b)(3) permits the disclosure of the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such communication."

The SCA does not contain an exception for civil discovery subpoenas. *See, e.g., Crispin v. Christian Audigier, Inc.,* 717 F.Supp.2d 965, 976 (C.D.Cal.2010) (rejecting argument that the SCA permits the disclosure of the contents of communications pursuant to a civil discovery subpoena) [3]; *Flagg v. City of Detroit,* 252 F.R.D.

---

**3.** In *Crispin,* the court explained that reading an exception for civil discovery subpoenas into the SCA "would lead to the anomalous result that, in order to obtain information protected by the SCA, a governmental entity would have to comply with the Federal Rules of Criminal Procedure governing warrants, or for communications more than 180 days old, statutory procedures requiring notice to the

346, 350 (E.D.Mich.2008) ("[A] s noted by the courts and commentators alike, § 2702 lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or court order."); *Viacom International Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y.2008) (holding that the SCA "contains no exception for disclosure of such communications pursuant to civil discovery requests"); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606, 611 (E.D.Va.2008) ("Applying the clear and unambiguous language of § 2702 to this case, AOL, a corporation that provides electronic communication services to the public, may not divulge the contents of the Rigsbys' electronic communications to State Farm because the statutory language of the [SCA] does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas."); *O'Grady v. Superior Court*, 139 Cal.App.4th 1423, 1447, 44 Cal.Rptr.3d 72 (2006) ("Since the [SCA] makes no exception for civil discovery and no repugnancy has been shown between a denial of such discovery and congressional intent or purpose, the Act must be applied, in accordance with its plain terms, to render unenforceable the subpoenas seeking to compel Kraft and Nfox to disclose the contents of e-mails stored on their facilities.").

By contrast, the SCA permits AT & T to "divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) ... to any person other than a governmental entity." 18 U.S.C. § 2702(c)(6). Because Defendants are not

a governmental entity,[4] AT & T may disclose to them subscriber information, other than content, consistent with the SCA.

Defendants' subpoena to AT & T requests the following ten categories of documents:

Category No. 1: DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and duration for all incoming and outgoing calls for telephone number [XXX–XXX–XXXX] from March 23, 2011 to March 23, 2012.

Category No. 2: DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector. and duration for all incoming and outgoing calls for Account Number [XXXXXXXXXXXX] from March 23, 2011 to March 23, 2012.

Category No. 3: DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and duration for all incoming and outgoing calls for Account Number [XXXXXXXXXXXX] from March 23, 2011 to March 23, 2012.

Category No. 4: DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and duration for all incoming and outgoing calls for any phone number associated with Aaron L. Mintz, Social Security No. [XXX–XX–XXXX] ("MINTZ")

---

subscriber before an administrative subpoena could issue, while a civil litigant could procure information simply by serving a subpoena duces tecum." *Crispin*, 717 F.Supp.2d at 975. Thus, the court concluded that the absence of any exception for civil discovery subpoenas in the text of the statute should be construed as intentional. *Id.*

4. Governmental entities may obtain both subscriber information and the content of communications, but must comply with additional requirements under the SCA. *See* 18 U.S.C. § 2703.

from March 23, 2011 to March 23, 2012.

Category No. 5: DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and content for all incoming and outgoing texts for telephone number [XXX–XXX–XXXX] from March 23, 2011 to March 23, 2012.

Category No. 6: DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and content for all incoming and outgoing texts for Account Number [XXXXXXXXXXX] from March 23, 2011 to March 23, 2012.

Category No. 7: DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and content for all incoming and outgoing texts for Account Number [XXXXXXXXXXXX] from March 23, 2011 to March 23, 2012.

Category No. 8: DOCUMENTS sufficient to show the date, time, originating and receiving telephone number, originating cell site and sector and content for all incoming and outgoing texts for any phone number associated with MINTZ from March 23, 2011 to March 23, 2012.

Category No. 9: The visiting location register entries for telephone number [XXX–XXX–XXXX] for March 2012.

Category No. 10: The visiting location register entries for any telephone

number associated with MINTZ for March 2012.

(Joint Stip., Horn Decl., Exh. A at 31–32).

 As set forth above, Category Nos. 1, 2, 3, 4, 9, and 10 seek only subscriber information and not the content of any communications. (Joint Stip., Horn Decl., Exh. A at 31–32). As Defendants are not a governmental entity, AT & T may disclose this information to them consistent with the SCA. *See* 18 U.S.C. § 2702(c)(6). However, Category Nos. 5, 6, 7, and 8 seek the content of incoming and outgoing text messages. (Joint Stip., Horn Decl., Exh. A at 31–32). Because AT & T is an "electronic communication service" within the meaning of 18 U.S.C. § 2702(a)(1), it may not disclose the content of text messages unless Defendants are "an addressee or intended recipient of such communication or an agent of such addressee or intended recipient," 18 U.S.C. § 2702(b)(1), or unless AT & T obtains "the lawful consent of the originator or an addressee or intended recipient of such communication." 18 U.S.C. § 2702(b)(3).

The parties have not addressed the application of the SCA to Defendants' subpoena.[5] However, it does not appear that Defendants are an addressee or intended recipient or an agent of such addressee or intended recipient of any of Plaintiff's text messages. If they were, Defendants would already have possession of the text messages and would not need to subpoena them. Defendants also do not have the consent of the originator, Plaintiff, and it does not appear that they have the consent of an addressee or intended recipient of any of Plaintiff's text messages. Thus, the

---

**5.** Neither party addressed the question of Plaintiff's standing to challenge a subpoena to a third party. In *Crispin,* the Court specifically discussed this issue and concluded that "an individual has a personal right in information in his or her [social networking site] the same

way that an individual has a personal right in employment and bank records … this personal right is sufficient to confer standing to move to quash a subpoena seeking such information." *Crispin,* 717 F.Supp.2d at 974.

Court concludes that the SCA prohibits AT & T from disclosing the content of any text messages as sought by Category Nos. 5, 6, 7, and 8.

█ While the SCA prohibits AT & T from disclosing the content of any text messages to Defendants pursuant to a subpoena, the SCA does not prevent Defendants from obtaining this information through other means. *See, e.g., Flagg,* 252 F.R.D. at 366 (holding that although the SCA prohibited a phone company's disclosure pursuant to a civil discovery subpoena, the plaintiff could obtain the same information by serving a request for production of documents on the defendant pursuant to Federal Rule of Civil Procedure 34); *Juror Number One v. Superior Court,* 206 Cal.App.4th 854, 865, 142 Cal. Rptr.3d 151 (2012) (holding that although the SCA prohibited the court from ordering Facebook to produce copies of a juror's wall postings, the court could order the juror to request the wall postings from Facebook directly). Indeed, Federal Rule of Civil Procedure 34(a)(1) expressly permits a party to "serve on any other party a request ... to produce" "electronically stored information" that is "in the responding party's possession, custody, or control." Here, documents reflecting the content of Plaintiff's text messages are within his "control" because he has "the legal right to obtain [these] documents on demand" from AT & T. *United States v. Int'l Union of Petroleum & Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir.1989); *see also Duran v. Cisco Systems, Inc.,* 258 F.R.D. 375, 379 (C.D.Cal.2009). Because Plaintiff is the "originator" of his text

messages, he may request copies of these messages from AT & T consistent with the SCA. *See* 18 U.S.C. § 2702(b)(2).

Thus, Defendants may request documents reflecting the content of Plaintiff's relevant text messages, consistent with the SCA, by serving a request for production of documents on Plaintiff pursuant to Rule 34.[6] *See, e.g., O'Grady,* 139 Cal.App.4th at 1446, 44 Cal.Rptr.3d 72 ("Where a party to the communication is also a party to the litigation, it would seem within the power of a court to require his consent to disclosure on pain of discovery sanctions."). Of course, Plaintiff may raise privacy or other objections to any Rule 34 document request, but those objections have not yet been properly raised before this Court. *See Flagg,* 252 F.R.D. at 357–58 (holding that the plaintiff could serve a document request pursuant to Rule 34 consistent with the SCA, but noting that the defendant may still raise privilege or relevancy objections).

In sum, the SCA prevents AT & T from providing the content of text messages to Defendants under the current subpoena. However, because Category Nos. 1, 2, 3, 4, 9, and 10 seek only subscriber information and not the content of communications, AT & T may disclose this information to Defendants consistent with the SCA. Although the SCA does not prohibit AT & T from disclosing subscriber information to Defendants, Plaintiff raises privacy objections to this information. (Joint Stip. at 3–4). Thus, the Court must next examine whether the disclosure of Plaintiff's sub-

---

**6.** At first glance, it may appear that the Court is elevating form over function to conclude that the SCA prohibits a third-party subpoena which can essentially be accomplished through a request for production of documents directed to Plaintiff. However, "it would be far from irrational for Congress to conclude that one seeking disclosure of the contents of e-mail, like one seeking old-fashioned written correspondence, should direct his or her effort to the parties to the communication and not to a third party who served only as a medium and neutral repository for the message." *O'Grady,* 139 Cal.App.4th at 1446, 44 Cal.Rptr.3d 72.

scriber information violates his privacy rights.

## B. California Law Governs The Assertion Of Plaintiff's Privacy Rights

██ The Court has jurisdiction over this action, including Defendants' counterclaims, pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. (Counterclaim at 1). Because jurisdiction is based on diversity, the Court looks to the substantive law of the forum state, California, to resolve the assertion of Plaintiff's privacy rights. *See, e.g., Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir.2001); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir.1995); *see also* F.R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). "Where the state supreme court has not ruled on a question in issue, [a federal court sitting in diversity] look[s] to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Home Indem. Co.*, 43 F.3d at 1326 (internal quotation marks omitted).

██ Under the California Constitution, all people have a constitutionally protected right to privacy. *See* Cal. Const. Art. I, § 1 ("All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."). To prevent a constitutionally protected invasion of privacy, a plaintiff must establish: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *TBG Ins. Services Corp. v.*

*Superior Court*, 96 Cal.App.4th 443, 449, 117 Cal.Rptr.2d 155 (2002) (internal quotation marks omitted); *accord Life Technologies Corp. v. Superior Court*, 197 Cal. App.4th 640, 652, 130 Cal.Rptr.3d 80 (2011).

██ "Assuming the existence of a legally cognizable privacy interest, the extent of that interest is not independent of the circumstances, and other factors (including advance notice) may affect a person's reasonable expectation of privacy." *TBG Ins. Services Corp.*, 96 Cal.App.4th at 449, 117 Cal.Rptr.2d 155. "A reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms, and the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." *Id.* (internal quotation marks omitted).

### 1. Factual Background

As set forth above, the parties have submitted supplemental declarations to clarify the facts regarding Plaintiff's assertion of his right to privacy. According to Plaintiff, "[t]he phone number on the AT & T account identified in Priority Sports' subpoena was [his] personal mobile phone number before [he] became employed with Priority Sports in September 2001." (Mintz Decl. at 2, ¶ 2). Plaintiff states that he "had no other mobile phone number for the more than 11 years [he] was employed with Priority Sports" and that he "used the mobile phone number for all of [his] personal mobile phone communications prior to and during [his] employment." (*Id.*). Plaintiff states that "[a]bout two months after [he] began working [for Priority Sports], [he] mentioned to Kenny Zuckerman, [his] supervisor and the office manager, that [he] was using [his] personal mobile phone for business, and asked if the

company would pay [his] phone bill." (*Id.* at 2, ¶ 3). Plaintiff states that "Mr. Zuckerman was able to get the company to pay the bill for usage of [his] personal phone." (*Id.*).

Plaintiff states that in "early October 2009," he became "dissatisfied with Verizon, which was [his] mobile carrier at the time," and so he "opened the AT & T account identified in Priority Sports' subpoena." (Mintz Decl. at 2, ¶ 4). Plaintiff states that he "set up the AT & T account as a personal account, not a business account" and that he "had no other personal mobile number or personal mobile telephone account." (*Id.*). According to Plaintiff, he "simultaneously purchased a Blackberry from AT & T" at a cost of $413.33. (*Id.* at 2, ¶ 5). Plaintiff states that "Priority Sports paid only $300, and deducted $113.33 from [his] paycheck." (*Id.*); (*see also id.*, Exh. 1) (credit card statement showing cost of Blackberry and pay stub reflecting deduction).

Plaintiff states that he contacted AT & T regarding his mobile telephone on March 23, 2012, the same day he resigned from Priority Sports, and was informed that "[his] personal AT & T account that [he] opened in early October 2009 had been changed to a Priority Sports business account in late 2011." (Mintz Decl. at 3, ¶ 6). Plaintiff states that he "never requested that [his] personal AT & T account be changed to a business account, nor did [he] authorize anyone to make this change." (*Id.*).

With regard to the Employment Manual, Plaintiff states that he "never read the manual," that he has "no recollection of having signed [an] acknowledgment" of the terms of the manual, and that he "believe[s] [he] never did." (Mintz Decl. at 3, ¶ 7). Plaintiff states that "no one from [Priority Sports] orally informed [him] of any policy providing any of the following: that [he] could only use [his] Blackberry for company business; that personal use of [his] Blackberry should be kept to an absolute minimum; that Priority Sports was asserting that it own[ed] the Blackberry and [his] personal information stored on the device; that Priority Sports was asserting that it had the right to monitor and review [his] personal information on [his] Blackberry; that Priority Sports was asserting that [he] [had] no right of privacy in information related to [his] personal telephone calls, personal text messages, and call locations." (*Id.* at 3, ¶ 8).

Finally, Plaintiff states that "[g]iven that the mobile telephone number was [his], the AT & T account was [his] personal account (until someone changed to a Priority Sports business account without [his] knowledge or consent a few months before [his] resignation), [he] paid part of the purchase price of the Blackberry at Priority Sports' insistence, and [he] was unaware of any computer policy concerning mobile devices, [his] expectation was that information related to [his] personal telephone calls, personal text messages, and locations where [he] used [his] mobile phone was [his] private information." (Mintz Decl. at 3–4, ¶ 9).

Defendants have offered the declaration of Mark Goldstick, Chief Financial Officer and head of Human Resources of Priority Sports. (Goldstick Decl. at 2, ¶ 1). Mr. Goldstick asserts that he sent all Priority Sports employees an email on December 28, 2009 "telling them that they would be receiving a revised Priority Sports' employee handbook and that it was 'very important that everyone read and understands the manual so there are no misunderstandings of Priority's policies.'" (*Id.* at 2, ¶ 2); (*see also id.*, Exh. 1) (copy of December 28, 2009 email). Plaintiff is the first addressee in this email. (*Id.*, Exh. 1). Mr. Goldstick states that "[o]n December 29, 2009, [he] sent the Employment Manu-

al to [Priority Sports'] employees in the Los Angeles, California office, including [Plaintiff] via UPS." (*Id.* at 2, ¶ 3); (*see also id.,* Exh. 2) (copy of UPS shipping bill). Finally, Mr. Goldstick states that "Priority Sports received confirmation that the package had been delivered on December 31, 2009." (*Id.* at 3, ¶ 3).

According to Lauren Gibbs, counsel for Defendants, Plaintiff's counsel provided her with boxes of documents from Plaintiff's office. (Gibbs Decl. at 2, ¶¶ 2–4). Ms. Gibbs states that one of the boxes contained a copy of the Employment Manual. (*Id.* at 2, ¶ 5). This copy of the Employment Manual contained Section 5.10, which states in relevant part:

> The personal use of Priority equipment or property should be kept to an absolute minimum. . . . Any personal or other information placed on Priority E-mail, voice mail, telephones, blackberries, or any computer system shall be the property of Priority, and shall not be considered the private or confidential property of the employee. Indeed, Priority has the ability and right to review E-mail, voice mail, and telephone messages.

(*Id.* at 3, ¶ 6); (*see also id.,* Exh. 2) (copy of Section 5.10 of the Employment Manual). Finally, Ms. Gibbs notes that Plaintiff admitted receiving a copy of the Employment Manual in his Answer to the Counterclaim. (*Id.* at 3, ¶ 7); (*see also id.,* Exh. 23 at 4, ¶ 28) (copy of Plaintiff's Answer to the Counterclaim).

### 2. Plaintiff Had Only A Limited Expectation Of Privacy In The AT & T Account

██ As set forth above, the Court must consider all the circumstances to determine the extent of Plaintiff's expectation of privacy in the AT & T account. *See TBG Ins. Services Corp.,* 96 Cal.App.4th at 450, 117 Cal.Rptr.2d 155 ("[O]ur decision about the reasonableness of [the employee's]

claimed expectation of privacy must take into account any accepted community norms, advance notice to [the employee] about [the employer's] policy statement, and whether [the employee] had the opportunity to consent to or reject the very thing that constitutes the invasion."). Having considered the facts in the parties' supplemental declarations, the Court concludes that the circumstances weigh both in favor of, and against, Plaintiff's expectation of privacy. Thus, the Court concludes that Plaintiff had only a limited expectation of privacy in the AT & T account.

As an initial matter, the mobile phone number in question was Plaintiff's personal number before he began working for Priority Sports. (Mintz Decl. at 2, ¶ 2). Priority Sports began paying the bill for this phone shortly after Plaintiff started working at Priority Sports because Plaintiff was using his personal phone to also make business calls. (*Id.* at 2, ¶ 3). Thus, Priority Sports knew that Plaintiff was using the phone to make personal calls. (*Id.*). The fact that Priority Sports was aware of and permitted Plaintiff to make personal calls increases Plaintiff's expectation of privacy because he could reasonably believe that he had Priority Sports' approval to use the phone for personal reasons.

By contrast, the facts surrounding Plaintiff's purchase of a Blackberry fall both in favor and against an expectation of privacy. Plaintiff transferred his account to AT & T from Verizon in early October 2009 and simultaneously purchased a Blackberry. (Mintz Decl. at 2, ¶¶ 4–5). Plaintiff set up the account as a personal account and paid for part of the cost of the Blackberry. (*Id.*). The total cost of the Blackberry was $413.33. (*Id.* at 2, ¶ 5). "Priority Sports paid only $300, and deducted $113.33 from [Plaintiff's] paycheck." (*Id.*). The fact that Plaintiff paid for part of the cost of the Blackberry increases his expec-

tation of privacy because he could reasonably believe that he owned the phone. However, at the same time, the fact that Priority Sports paid for part of the Blackberry reduces Plaintiff's expectation of privacy because it would have been unreasonable for him to believe that he retained exclusive ownership of the phone.

On December 28, 2009, Priority Sports distributed an Employment Manual, (Goldstick Decl. at 2, ¶ 2), which advised employees not to use company equipment for personal reasons and stated that Priority Sports had the right to review all e-mail, voice mail, and telephone messages on company equipment. (Gibbs Decl. at 3, ¶ 6). While Plaintiff received a copy of the Employment Manual, (id. at 3, ¶ 7), he never read the manual, has no recollection of signing an acknowledgment of the terms of the manual, and believes that he never signed any such acknowledgment. (Mintz Decl. at 3, ¶ 7). Defendants have not produced any contrary evidence proving that Plaintiff did sign such an acknowledgment. The fact that Priority Sports distributed the Employment Manual, which Plaintiff acknowledges receiving, (Gibbs Decl. at 3, ¶ 7), reduces Plaintiff's expectation of privacy. At the same time, however, the fact that Plaintiff never read the Employment Manual or signed an acknowledgment of its terms, mitigates the reduction.

Defendants contend that Plaintiff "has no right to privacy" in the AT & T account and rely primarily on *Holmes v. Petrovich Dev. Co., LLC,* 191 Cal.App.4th 1047, 1068–69, 119 Cal.Rptr.3d 878 (2011). (Joint Stip. at 11). In *Holmes,* the California Court of Appeal held that an employee had no expectation of privacy in emails she sent to her attorney from a company computer because the company had a policy against using computers for personal reasons and the policy stated that the company could monitor all emails. *Id.* at 1068–71, 119 Cal.Rptr.3d 878. The court of

appeal emphasized that the computer used to send the emails "belong[ed] to the [company]," that the company had a policy against using its computers for personal reasons, and that the employee was "aware of and agree[d] to these conditions." *Id.* at 1068, 119 Cal.Rptr.3d 878; *see also id.* at 1068–69, 119 Cal.Rptr.3d 878 ("Holmes used her employer's company e-mail account after being warned that it was to be used only for company business, that e-mails were not private, and that the company would randomly and periodically monitor its technology resources to ensure compliance with the policy."). Indeed, the employee "admitted reading and signing" the company policy. *Id.* at 1052, 119 Cal. Rptr.3d 878.

The Court concludes that *Holmes* weighs against Plaintiff's expectation of privacy in the AT & T account, but *Holmes* is distinguishable because Plaintiff did not read or sign the Employment Manual, (Mintz Decl. at 3, ¶ 7), as did the employee in *Holmes. Holmes,* 191 Cal. App.4th at 1052, 119 Cal.Rptr.3d 878. Another important distinguishing factor is that Priority Sports knew Plaintiff was using the AT & T account for personal reasons, (Mintz Decl. at 2, ¶ 3), and the fact that Priority Sports did not pay for the total cost of Plaintiff's Blackberry is tacit recognition of this knowledge. (*Id.* at 2, ¶¶ 4–5). By contrast, in *Holmes,* the court of appeal emphasized that the employee "did not use her home computer" to send the emails in question, but "[i]nstead, she used [her employer's] computer." *Holmes,* 191 Cal.App.4th at 1068, 119 Cal. Rptr.3d 878.

Plaintiff contends that the subpoena served on AT & T violates his privacy rights and relies primarily on *Sovereign Partners Ltd. P'shp v. Restaurant Teams Int'l, Inc.,* 1999 WL 993678, at *3–4 (S.D.N.Y. Nov. 2, 1999), *Herff Jones, Inc.*

*v. Okla. Graduate Servs.*, 2007 WL 2344705, at \*2–5 (W.D.Okla. Aug. 15, 2007), and *Special Markets Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, \*1–3 (N.D.Ill. May 2, 2012). (Joint Stip. at 8–9). In *Sovereign Partners Ltd. P'shp*, the U.S. District Court for the Southern District of New York held that a subpoena to AT & T seeking telephone records "raise[d] significant privacy concerns" and ordered the production of records to the court for *in camera* review, as well as the production of redacted records to the plaintiff. *Sovereign Partners Ltd. P'shp*, 1999 WL 993678, at \*4. However, the court provided very little analysis of the privacy issues at stake and appeared to be applying New York privacy law. *Id.* Thus, *Sovereign Partners Ltd. P'shp* has only slight application to this case.

In *Herff Jones, Inc.*, the U.S. District Court for the Western District of Oklahoma quashed subpoenas to AT & T and other telecommunications providers seeking telephone records and GPS data because the court concluded that the requested information was either "not relevant to any claim or defense" or that "the requests [were] overly broad." *Herff Jones, Inc.*, 2007 WL 2344705, at \*3. However, the court based its ruling on Federal Rule of Civil Procedure 26 and did not address the issue of privacy rights under state law. *Id.* at \*2–5. Thus, *Herff Jones, Inc.* also has only slight bearing on the instant case. Moreover, the Court concludes that the telephone records sought by Defendants here are relevant under Federal Rule of Civil Procedure 26(b)(1) to Defendants' counterclaims that Plaintiff made false and defamatory statements about Priority Sports and improperly solicited Priority Sports clients while still employed at Priority Sports.

Finally, in *Special Markets Ins. Consultants, Inc.*, the U.S. District Court for the Northern District of Illinois quashed subpoenas to Verizon Wireless and Yahoo, Inc. seeking email and text messaging records because the records would have revealed the content of communications and disclosure would therefore violate the SCA. *Special Markets Ins. Consultants, Inc.*, 2012 WL 1565348, at \*1–3. However, the court held in the alternative, that "even if the subpoenas were not prohibited by the SCA, the court would enter a protective order under Rule 26(c)" because the subpoenas encompassed irrelevant personal communications and therefore were "grossly overbroad." *Id.* at \*3. The Court concludes that *Special Markets Ins. Consultants, Inc.* weighs in favor of Plaintiff's expectation of privacy in the AT & T account, but provides only limited guidance because the court's primary holding was based on the SCA. The court did not address the issue of privacy rights under state law. *Id.* at \*4–9.

Having considered the applicable authority, as well as the supplemental declarations, the Court concludes that Plaintiff had a legally protected privacy interest in the AT & T account, but that under the circumstances, he had only a limited expectation of privacy. *See TBG Ins. Services Corp.*, 96 Cal.App.4th at 449–50, 117 Cal.Rptr.2d 155. Thus, the Court must next examine the intrusiveness of the requested information. *See id.* at 449, 117 Cal.Rptr.2d 155. As set forth above, the SCA prohibits AT & T from disclosing the content of any text messages as sought by Category Nos. 5, 6, 7, and 8. Thus, the Court must limit the scope of Defendants' subpoena to telephone numbers and cell site information, as well as the date, time, and duration of calls. (Joint Stip., Horn Decl., Exh. A at 31–32).

 The Court concludes that the disclosure of telephone numbers and cell site information, as well as the date, time, and duration of calls does not represent a sig-

nificant intrusion of Plaintiff's privacy, particularly because the Court can issue an appropriate protective order. *See, e.g., TBG Ins. Services Corp.*, 96 Cal.App.4th at 448, 454, 117 Cal.Rptr.2d 155 (concluding that production of a home computer which "contain[ed] significant personal information and data . . . including the details of [an employee's] personal finances, his income tax returns, and all of his family's personal correspondence" did not represent "a serious invasion" of the employee's privacy because the court could issue a protective order (internal quotation marks and brackets omitted)); *see also id.* at 454, 117 Cal.Rptr.2d 155 ("Appropriate protective orders can define the scope of [the employer's] inspection and copying of information on the computer to that which is directly relevant to this litigation, and can prohibit the unnecessary copying and dissemination of [the employee's] financial and other information that has no rational bearing on this case." (citation omitted)). Indeed, "Priority Sports agreed that the documents could be produced Attorneys' Eyes Only, pursuant to a protective order entered by the Court, eliminating any privacy concerns." (Joint Stip. at 15). Thus, the Court has balanced Plaintiff's limited expectation of privacy in the AT & T account against the intrusiveness of the disclosure and concludes that Plaintiff's privacy interests can be adequately protected with an appropriate protective order.

**Accordingly, the Court directs the parties to submit a stipulated protective order within five days of the date of this Order. Once the Court has entered a protective order, Defendants shall serve a copy of this Order on AT & T and AT & T shall have seven days to comply**

**with the subpoena. AT & T shall produce all of the requested information except for the content of text messages as sought by Category Nos. 5, 6, 7, and 8.**

**C. *Federal Law Supports The Court's Decision To Enforce The Subpoena For Information Other Than The Content Of Communications***

As set forth above, California law governs the assertion of Plaintiff's privacy rights because this Court has jurisdiction based on diversity. However, the Court finds it significant that federal law is consistent with the Court's application of California law. For example, in *City of Ontario*, the Supreme Court assumed that a government employee had a reasonable expectation of privacy in text messages sent on an employer-provided pager, but ultimately concluded that the employer's search of the pager by reading the text messages was reasonable. *City of Ontario*, 130 S.Ct. at 2630–31.[7] The Supreme Court explained that "the extent of an expectation is relevant to assessing whether the search was too intrusive." *Id.* at 2631. The Supreme Court evaluated the particular circumstances of the case and concluded that "[e]ven if [the employee] could assume some level of privacy would inhere in his messages, it would not have been reasonable for [him] to conclude that his messages were in all circumstances immune from scrutiny." *Id.* Thus, the Supreme Court found that the employee "had only a limited expectation" of privacy in the text messages. *Id.* Ultimately, the Supreme Court balanced the intrusiveness of the search against the employee's limited expectation of privacy to determine that the search was reasonable.[8] *Id.* ("From

7. The Supreme Court declined to review the Ninth Circuit's ruling that the wireless company's disclosure of the text messages violated the SCA and instead only addressed whether the employer's review of those text messages

also violated the Fourth Amendment. *See City of Ontario*, 130 S.Ct. at 2627–28.

8. Although the Court relied in part on the government employer's need to scrutinize the employee's text messages because he was a

the [employer's] perspective, the fact that [the employee] had only a limited privacy expectation, with boundaries that we need not here explore, lessened the risk that the review would intrude on highly private details of [the employee's] life."). The Supreme Court's balancing of the privacy interests in *City of Ontario* is consistent with the Court's conclusion that the subpoena to AT & T should be enforced, subject to a protective order.

Federal law also supports the Court's conclusion that the disclosure of telephone numbers, as well as the date, time, and duration of calls does not represent a significant intrusion of Plaintiff's privacy. Indeed, the Supreme Court has held that individuals have no expectation of privacy in outgoing telephone numbers because "[a]ll telephone users realize that they must 'convey' phone numbers to the telephone company" and that "the phone company has facilities for making permanent records of the numbers they dial." *Smith v. Maryland*, 442 U.S. 735, 742, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Relying on *Smith*, the Ninth Circuit has held that individuals also have no expectation of privacy in incoming telephone numbers and related phone records. *See, e.g., United States v. Reed*, 575 F.3d 900, 914 (9th Cir.2009) (finding no expectation or privacy in outgoing and incoming telephone numbers, as well as data about "call origination, length, and time of call"); *California v. FCC*, 75 F.3d 1350, 1361 (9th Cir. 1996) ("A phone number is not among the select privacy interests protected by a federal constitutional right to privacy."); *In re Application of United States for an Order etc.*, 616 F.2d 1122, 1128 n. 4 (9th

Cir.1980) ("There can no longer be any constitutional objection to the voluntary compliance of a telephone company with the request of a law enforcement agency for a pen register or trace.") [9]; *United States v. Lustig*, 555 F.2d 737, 747 (9th Cir.1977) ("It is well established that the 'expectation of privacy' only extends to the content of telephone conversations, not to records that conversations took place.").

Federal courts are currently divided over whether individuals have a reasonable expectation or privacy in historic cell site information. *See, e.g., In re Application of the United States of America for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government*, 620 F.3d 304, 317 (3d Cir.2010) (finding expectation of privacy); *Id.* at 321 n. 11 (Tashima, J., concurring) (suggesting there may be no expectation of privacy, but stating that it depends on unknown facts); *In re U.S. for Historical Cell Site Data*, 747 F.Supp.2d 827, 839–40 (S.D.Tex.2010) (finding expectation of privacy); *U.S. Telecom Ass'n. v. FCC*, 227 F.3d 450, 459 (D.C.Cir.2000) (finding no expectation of privacy). As set forth above, however, Plaintiff's privacy interests can be adequately protected with an appropriate protective order. Thus, federal law supports the Court's decision to enforce the subpoena for information other than the content of communications.

### III.

### CONCLUSION

IT IS ORDERED THAT Plaintiff's Motion to Quash Subpoena to AT & T, for a

---

law enforcement officer, *City of Ontario*, 130 S.Ct. at 2631, "the Court also conclude[d] that the search would be regarded as reasonable and normal in the private-employer context." *Id.* at 2633 (internal quotation marks omitted).

**9.** "Both the pen register and the ESS trace are designed to record, through the monitoring of electrical impulses created by the turning of the telephone dial, actual telephone numbers to or from which calls are placed." *In re Application of United States for an Order etc.*, 616 F.2d at 1128.

Protective Order, and for Sanctions (Docket No. 23) is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED IN PART because the Stored Communications Act prohibits AT & T from disclosing the content of any text messages as sought by Category Nos. 5, 6, 7, and 8. The Motion is DENIED with regard to the remainder of the subpoena. The Motion is also DENIED to the extent Plaintiff seeks sanctions.

**The Court directs the parties to submit a stipulated protective order within five days of the date of this Order. Once the Court has entered a protective order, Defendants shall serve a copy of this Order on AT & T and AT & T shall have seven days to comply with the subpoena. AT & T shall produce all of the requested information except for the content of text messages as sought by Category Nos. 5, 6, 7, and 8.**

**IT IS SO ORDERED.**