COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| THE STATE OF TEXAS, | | No. 08-16-00089-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 243rd District Court |
| | § | |
| EDGAR VASQUEZ, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20150D01642) |
| | § | |

## **O P I N I O N**

This is an appeal from the dismissal of an indictment based the State's supposed failure to provide a speedy trial. The State indicted Edgar Vasquez for the continuous sexual abuse of a child under 14 years of age, and indecency with a child by sexual conduct. The course of proceedings includes two mistrials--in both instances counsel "ran the panel" during voir dire. Another setting was passed when the trial court granted Vasquez's motion for continuance, allowing him to obtain additional evidence.

One year and one month following Vasquez's arrest, the trial court granted a motion to dismiss based on speedy trial right violation. We reverse.

### APPLICABLE LAW AND STANDARD OF REVIEW

The Sixth Amendment protects the right to a speedy trial and the Fourteenth Amendment requires the States to respect that right. U.S. Const. amend. VI and XIV; *Klopfer v. State of North*

*Carolina*, 386 U.S. 213, 222-26, 87 S.Ct. 988, 993-95, 18 L.Ed.2d 1 (1967) (noting that the Sixth Amendment right to speedy trial applies to states by incorporation under Due Process Clause of Fourteenth Amendment); *Henson v. State*, 407 S.W.3d 764, 766 (Tex.Crim.App. 2013). The right protects a defendant from "oppressive pretrial incarceration, mitigates the anxiety and concern accompanying public accusations, and ensures that the defendant can mount a defense." *Henson*, 407 S.W.3d at 766*, citing Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972). The Texas Constitution provides a similar protection which has been treated as co-extensive with the federal protection. Tex. Const. art. I, § 10; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002).

A speedy trial claim balances four factors: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) any prejudice to the defendant resulting from the delay. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex.Crim.App. 2014), *citing Barker*, 407 U.S. at 530, 92 S.Ct. at 2192 (setting out four *Barker* factors). The first factor, however, is something of a double factor. Before we balance all the factors, the accused is required to make a threshold showing that the length of the delay was "presumptively prejudicial." *Gonzales*, 435 S.W.3d at 808. The length of the delay is therefore a "triggering mechanism" for analysis of the remaining *Barker* factors. *Id.* at 809; *see also State v. Munoz*, 991 S.W.2d 818, 821-22 (Tex.Crim.App. 1999), *quoting Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992).

When all the *Barker* factors are considered, no factor is either a necessary or sufficient condition to the finding of a deprivation of a right to speedy trial. *Johnson v. State*, 954 S.W.2d 770, 772 (Tex.Crim.App. 1997), *citing Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. Instead, these factors are related and must be considered together with such other circumstances that may be

2

relevant. *Johnson*, 954 S.W.2d at 773. This balancing test requires weighing, case-by-case, "the conduct of both the prosecution and the defendant." *Munoz*, 991 S.W.2d at 821, *quoting Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. Courts "must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu v. State*, 253 S.W.3d 273, 281 (Tex.Crim.App. 2008). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id*.

We apply a bifurcated standard of review to speedy-trial claims. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002). The *Barker* factors necessarily involve fact determinations and legal conclusions. *Johnson*, 954 S.W.2d at 771. We review the trial court's decision under "an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." *Zamorano*, 84 S.W.3d at 648; *Palacios v. State*, 225 S.W.3d 162, 167 (Tex.App.--El Paso 2005, pet. ref'd). "That is, we give almost total deference to historical findings of fact of the trial court that the record supports and draw reasonable inferences from those facts necessary to support the trial court's findings, but we review de novo whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors, which are legal questions." *Gonzales*, 435 S.W.3d at 808-09. The balancing test as a whole is a "purely legal question." *Johnson*, 954 S.W.2d at 771. When the facts are largely undisputed, the primary issue for review is the legal significance of those facts. *Zamorano*, 84 S.W.3d at 648.

## DISCUSSION

The State's contends that a proper review of the *Barker* factors shows the trial court erred under our bifurcated standard of review. Following the course of its argument, we start with the first *Barker* factor, the length of delay.

**The length of delay**

Vasquez was arrested on March 16, 2015 on a charge of continuous sexual abuse of a child under 14 years of age. The child was his daughter. The ensuing grand jury indictment on that charge (plus a count for indecency with a child), specified that he committed the offenses between December 10, 2010 and December 18, 2014.[1] The right to a speedy trial attaches when a person "becomes an accused," i.e., when he is arrested or when he is charged. *Henson*, 407 S.W.3d at 767. Thus, even though there was some delay between the date of the offense, and the date Vasquez was arrested, we do not consider that period for speedy trial purposes.[2]

The first *Barker* factor asks whether the movant has shown a delay long enough to create a presumption of some prejudice. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. To do so, Vasquez is required to show that the interval between accusation and trial crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay. *Zamorano*, 84 S.W.3d at 648-49, *quoting Doggett*, 505 U.S. at 652, 112 S.Ct. at 2690. But given the "imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31, 92 S.Ct. at 2192. The nature of the case is important. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id*. at 531, 92 S.Ct. at 2192.

---

[1] The State later agreed to modify the range to delete any conduct after December 18, 2013.

[2] A person who has not yet been arrested or formally charged cannot seek protection under the Speedy Trial Clause, and the State is not required "to discover, investigate, and accuse any person within any particular period of time." *U.S. v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). Rather, "[a]ny delay between commission of the crime and indictment is controlled by the applicable statute of limitations." *Kroll v. United States,* 433 F.2d 1282, 1286 (5th Cir. 1970); *see also Marion*, 404 U.S. at 322; 92 S.Ct. at 464 (statute of limitations is "the primary guarantee against bringing overly stale criminal charges")(internal quotations omitted). Any pre-indictment delay might be addressable on Fifth Amendment due process grounds. *Marion*, 404 U.S. at 313, 92 S.Ct. at 459; *State v. Krizan-Wilson*, 354 S.W.3d 808, 814 (Tex.Crim.App. 2011). A due process claim requires the movant to show (1) substantial prejudice, and (2) that the delay was an "intentional device used to gain a tactical advantage over the accused." *Krizan-Wilson*, 354 S.W.3d at 814-15; *see also Saul v. State*, 510 S.W.3d 672, 686 (Tex.App.--El Paso 2016, pet. ref'd). That claim was not made below.

4

After a several trial settings and events that we discuss in detail later in this opinion, the trial court dismissed the case on April 27, 2016. A period of thirteen months and eleven days elapsed between the date of arrest and termination of the proceedings. We agree with Vasquez that a delay of thirteen months in an aggravated sexual assault of a child case meets the level of presumptive prejudice, thus triggering a full *Barker* analysis. *Doggett*, 505 U.S. at 651, 652 n.1, 112 S.Ct. at 2691 (noting that courts "have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year"); *cf. Cantu*, 253 S.W.3d at 281 ("There is no set time element that triggers the analysis, but we have held that a delay of four months is not sufficient while a seventeen-month delay is."); *Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim.App. 1992) (assuming arguendo that a thirteen month delay in murder trial was prima facia unreasonable).

Having found a presumptively prejudicial delay, however, does not mean that factor automatically weighs heavily in Vasquez's favor. A delay sufficient to meet the "presumptive prejudice" level "simply marks the point at which courts deem the delay unreasonable enough to trigger [further] enquiry." *Munoz,* 991 S.W.2d at 821-22, *quoting Doggett*, 505 U.S. at 652 n.1, 112 S.Ct. at 2691. "When the length of delay stretches *well beyond* the bare minimum needed to trigger a full *Barker* analysis, the length of a delay weighs against the State, and the longer the delay, the more the defendant's prejudice is compounded." [Emphasis added]. *Gonzales*, 435 S.W.3d at 809, *citing Zamorano*, 84 S.W.3d at 649. While the delay here is just beyond the threshold necessary to trigger a *Barker* analysis, it is not "well beyond" the minimum threshold, and this factor is neutral, or at best only counts slightly against the State.

**Reason for delay**

In assessing the significance of any delay, we must determine "whether the government or the criminal defendant is more to blame for th[e] delay," *Doggett*, 505 U.S. at 651, 112 S.Ct. at

2690. Different weight is accorded to delays based on the reason for the delay. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex.Crim.App. 2017). For instance, a deliberate delay "to hamper the defense" weighs heavily against the State. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. Yet a "more neutral reason such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. A valid reason for the delay should not be weighed against the government at all. *Gonzales*, 435 S.W.3d at 810 ("Unjustifiable reasons for delay count towards the 'length of delay,' while justifiable reasons for delay do not."); *Munoz*, 991 S.W.2d at 822. And a delay caused by the defendant might rise to the level of a waiver. *Id.* The State, carries the burden to establish the cause of any delay. *Shaw v. State*, 117 S.W.3d 883, 889 n.3 (Tex.Crim.App. 2003).

Keeping these principles in mind, we segment the events associated with this case, starting with Vasquez's arrest on March 16, 2015 through the dismissal on April 27, 2016.

*1. Arrest to Date of First Trial (March 16, 2015 to September 11, 2015)*

Sometime in the two weeks after his arrest, Vasquez retained counsel. The court set the case for a status hearing on May 13, 2015. The day prior to the status hearing, retained counsel filed a motion to reduce the bond and also moved to continue the status hearing because of a scheduling conflict. The hearing was reset to May 27, 2015.

The record suggests some on-going plea negotiations during this time period. By the end of April, the State recommended a ten-year sentence. By the May 27, 2015 status conference, the recommendation was down to two years on the indecency count. But ten days prior to that hearing, the retained attorney without stating any reason sought to withdraw. The trial court set a new status hearing for June 2, 2015, at which time the case was reset for a "plea" on June 10, 2015. On

6

the date the plea hearing, the trial court noted that "defendant withdrew" and the case was reset for a status conference on June 24, 2015 for the Vasquez to "reconsider."[3] On June 24, 2015, Vasquez's retained counsel filed a new motion to withdraw "due to the uncooperative attitude of the Defendant in assisting with the preparations of his defense." According to the motion, Vasquez had made known that he was dissatisfied with his counsel and "did not wish the undersigned counsel to represent him in this cause." The trial court granted that motion the same day and appointed the public defender's office as council of record. On July 8, 2015, the case was reset for three weeks so a social worker could interview Vasquez, and on August 12, 2015 the trial court's notes reflect that Vasquez again rejected the plea offer and "requested a quick trial."

The public defender promptly served discovery requests, and several pretrial motions. The court set a new status hearing for August 12, 2015. Just prior to that hearing date, Vasquez filed his own hand-written petition for pretrial habeas corpus. The petition sought his release from jail because the State had not announced ready within ninety days, citing TEX. CODE CRIM. PROC. ANN art. 17.151 (West 2015). Vasquez claimed to be without resources to make the $100,000 bond set for the charge in this case, and the $10,000 bond for a separate assault charge with bodily injury to a family member that was pending in another court.

The trial court set the case for trial on September 11, 2015.

2. *The first trial (September 11, 2015)*

On September 11, 2015, both the State and Vasquez announced ready for trial. The court called a panel of sixty-five prospective jurors. As the judge gave initial instructions and comments during voir dire, over half the panel indicated that they could not hear a case involving continuous sexual abuse of child under fourteen. The trial judge reminded the venire panel over ten pages in

---

[3] The record does not contain a transcript of any of these particular proceedings, but the trial court made handwritten notes describing, sometimes cryptically, the substance of each setting.

the record of their civic duty to hear difficult cases. Nonetheless, twenty prospective jurors informed the State's prosecutor during voir dire that they had been, or had known a victim of sexual abuse. During Vasquez's voir dire, seventeen of those persons agreed it would impact their ability to impartially decide the case. The trial judge then interrupted the voir dire and in a bench conference suggested they had "ran the panel." In the ensuing discussion, both parties agreed that between absences, and the responses already elicited, the next strike for cause would preclude a twelve person jury if there were no overlapping pre-emptory strikes. The court asked for a motion for mistrial. Vasquez's counsel asked that the State make the motion because his client was anxious to try the case, and the State obliged that request. The court then granted the motion for mistrial, noting that it was "no one's fault."

*3. First trial setting to the second trial setting (September 11, 2015 to December 9, 2015)*

Following the mistrial, Vasquez through counsel quickly moved to reduce his $100,000 bond. On October 1, 2015, Vasquez filed his own pro se "Motion to Provide a Speedy Trial" and the next day he filed another pretrial petition for habeas corpus. The court set the bond reduction hearing for October 7, 2015. The State opposed the motion, and in part claimed that Vasquez had absconded on a previous personal recognizance bond in another case. In support of its position, the State called Rachel Ramirez, who had had a long- term relationship with Vasquez, and was the mother of his three children. Ramirez testified that she, Vasquez, and the three children had previously moved to Kansas City where they stayed for five years. At some time during that move she learned that Vasquez had left El Paso to evade arrest on a felony charge. When the trial judge heard that testimony, he interrupted the proceeding so Ramirez could secure council. The trial

judge warned her that she testified to matters that might make her complicit in harboring a fugitive. The court recessed the hearing, which resumed on November 17, 2015.[4]

At the resetting, and after argument of counsel, the trial court set a $52,000 personal recognizance bond. Both counsel acknowledged the existence of a separate family violence assault case, which was set in another court, and for which a separate bond had been set. Ms. Ramirez did not appear at this resetting. When Vasquez's counsel complained about her non-attendance (as he wanted to cross-examine her), the trial court instructed Vasquez's counsel to file a motion.

Even though the court had already reduced the bond, the bond reduction hearing resumed on December 9, 2015, apparently to complete taking Rachel Ramirez's testimony. Vasquez counsel questioned her on several topics that would be useful at any eventual trial: the date and circumstances of her reporting the crime to the police; the denial of complaints from other two children; and her feeling of animus against Vasquez. Vasquez's counsel also cross-examined Ramirez about phone calls and texts she exchanged with Vasquez after the outcry. The trial court maintained the personal recognizance bond and later reset the trial for February 19, 2016.

Two evidentiary issues arose following the bond reduction hearing. First, Vasquez sought to exclude screen captures of several text messages that Vasquez sent to Rachel Ramirez. She had taken her cell phone to the police who photographed various text messages. Vasquez filed a motion in limine on February 3, 2016 challenging the authentication of those messages. He contended that the police only had screen captures of some of the text messages because Ramirez had deleted others. The trial court set the motion in limine for hearing on February 10, 2016. At the hearing, Vasquez intended to offer live testimony from Rachel Ramirez. A sheriff had

---

[4] The forty-day delay in resetting the hearing resulted from several reasons: (1) Ms. Ramirez spoke to an attorney who needed a transcript of the hearing to properly advise her, and (2) an earlier resetting was postponed because the court was in trial.

9

attempted to personally serve her with a subpoena, but left the subpoena attached to her door. She did not appear at the hearing, and the matter was reset for show cause hearing on February 18, 2016 (one day prior to trial).

On February 16, 2016, Vasquez filed motion for continuance of the trial setting, citing as grounds the need to subpoena records showing communications between Rachel Ramirez and a third person. Vasquez counsel asserted that he first learned of these communications on February 11, 2016.

Rachel Ramirez appeared at the February 18, 2016 show cause hearing. She denied receiving the subpoena for the earlier hearing. She denied having any recollection of missing or deleted text messages. At the hearing, Vasquez counsel raised a separate issue concerning Facebook posts, which was the subject of his motion for continuance. Vasquez sought Facebook postings that he contended Rachel Ramirez created under an alias identify. Vasquez claimed one posting, created after the February 10 hearing date, demonstrated her bias.[5] Counsel claimed that Facebook would likely not honor his subpoena for the account information, but based on prior experience in another case, Facebook would honor the State's subpoena. At the conclusion of the hearing, the trial court granted Vasquez's motion for continuance and reset the trial to April 22, 2016.

*4. Second trial setting to the third trial (February 19 to April 22, 2016)*

On March 10, 2016, Vasquez filed motion to compel. The motion sought to compel the State to obtain and produce "all information, including but not limited to all photos, posts, messages, and all other information" from Facebook pertaining to a designated Facebook account. Vasquez claimed the account was under a false name which Rachel Ramirez was using. The

---

[5] The message in question purportedly stated, "I'm going to throw you in jail. I'm going to keep my kids."

10

motion alleged that Facebook uniformly refuses to comply with subpoenas issued on behalf of criminal defendants but the State can and has obtained such records in the past.

The trial court heard the motion on March 23, 2016. Rachel Ramirez testified at the hearing, denying that the account was hers. Vasquez's argument at the hearing focused on the need to obtain account information showing the true identity of the person who set up the account. He claimed the communication at issue was sent between February 10 and 18, 2016, and dovetailed with the date of the show cause hearing. The trial court granted the motion and ordered the State to subpoena Facebook.[6] The court gave the attorneys one hour to review the form of an order and present it to the court.

For reasons not clear on our record, an order was not signed until March 30, 2016. The signed order was approved as to form by an attorney for both Vasquez and the State, but the order did not track the oral ruling from the bench. Instead, it makes a finding that the information was relevant and material to an on-going criminal investigation and ordered the remote service provider that maintained the relevant Facebook address to provide any records showing the identity of the person that created the account.

The hearing resumed on April 13, 2016. Vasquez's counsel complained that the order did not comport with the court's earlier ruling because it placed the burden on Facebook to produce the material, and not on the State to obtain the material. The trial court asked for a new order, which it signed the next day. That order required that counsel for the State to "obtain all information, including but not limited to all photos, posts, messages, and all other information"

---

[6] "THE COURT: . . . All right. Look, I'm just -- okay. I'm going to order the Court to subpoena -- the State to subpoena Facebook and bring those records. It's just reached a point where I think it's very critical and it's important to pursue the justice and the American way. We find out whether it is her account or isn't her account -- is or is not, I don't know. All right." The State's attorney responded that he would "do everything I can."

11

from the specified Facebook and produce the material at 8:00 am on the morning of trial (April 22, 2016).

### 5. *The third trial setting (April 22, 2016).*

Both the State and Vasquez announced ready on the morning of trial. The day before trial, however, the State had filed a motion to reconsider the trial court's earlier order to compel the Facebook evidence, and in response, on the morning of trial Vasquez filed a motion to dismiss for lack of a speedy trial.[7] The gist of the State's motion asserted that it complied as best it could with the order, but that the trial court's order was void. The gist of the Vasquez's motion was that if the State had not complied with the order to compel, it was not truly ready for trial. The trial court declined to entertain either motion while the prospective jurors were in the hallway awaiting voir dire and the court stated it would address the motions later.

During voir dire, Vasquez's counsel asked if anyone would have "difficulty paying attention -- close attention throughout the duration of this trial to testimony and discussion of explicit sexual acts with a child?" He also asked if everyone on the panel could consider the minimum statutory sentence. After registering the affirmative responses to those questions, the trial court questioned whether it had sufficient remaining jurors. Rebuffing the State's suggestion it might rehabilitate some of the venirepersons, the trial court granted a mistrial.

Several days later it heard and granted Vasquez's motion to dismiss based on speedy trial grounds.

### 6. *Assessing the cause of delay.*

The chronology shows some delays caused by Vasquez, some by the State, and some by circumstances beyond either parties' control. No facts were adduced that would fault the State for

---

[7] The State's motion to reconsider is not included in our record, but its content is generally described in the proceedings.

the period between the arrest (March 16, 2015) to the date of the first trial (September 11, 2015). The State is accorded some time to prepare for trial. *See Shaw*, 117 S.W.3d at 889-90 (declining to count three-month period between indictment and first trial because "the State was entitled to a reasonable period in which to prepare its case."); *cf. Rivero v. State*, 08-02-00191-CR, 2004 WL 42625, at *4 (Tex.App.--El Paso Jan. 8, 2004, no pet.)(not designated for publication)(agreeing that State is entitled to some time, but finding ten months was too long and would count against the State, but not heavily).

Nor could we conclude that the case could have been tried anytime between April through the end of June. Vasquez developed a fundamental disagreement with his retained counsel during that time-period, resulting in new counsel appointed on June 24, 2015. *See Halbert v. State,* 881 S.W.2d 121, 127 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd)(delay from defendant's change of attorneys not weighed against State); *State v. Urenda*, 08-04-00125-CR, 2005 WL 1844412, at *4 (Tex.App.--El Paso Aug. 4, 2005, pet ref'd)(not designated for publication)(change in counsel by defendant one of the reasons for delay, and not charged against the State). The disagreement in this case arose from the retained counsel's apparent advice to accept a plea deal, and the record shows some on-going plea discussions. *See Munoz*, 991 S.W.2d at 824 (ongoing good faith plea negotiations is a valid reason for delay and is not weighed against the State). Vasquez now contends that he never desired a plea, and that any negotiations were only between his lawyer and the State. That claim, even if true, does not deny that his attorney was engaged in the discussions. *See Vermont v. Brillon*, 556 U.S. 81, 85, 129 S.Ct. 1283, 1287, 173 L.Ed.2d 231 (2009)("Assigned counsel, just as retained counsel, act on behalf of their clients, and delays sought by counsel are ordinarily attributable to the defendants they represent.").[8]

---

[8] Vasquez also disputes that the record show that there were any plea negotiations, or that the State urged this as a reason for the delay in its response below. The trial court's own notes reflect the existence of some plea discussions.

The first trial resulted in a mistrial, deemed by the trial court as not the fault of either party. The fact of the mistrial necessitated some measure of additional delay. The trial court could only reset the case consistent with its other existing trial settings, and ultimately did so on February 19, 2016. A note from the trial judge on September 23, 2015 reflects the court was "unable to set trial until next year." In this sense, that time period is attributable to the trial court's docket and is one of the "more neutral reason" that weighs less heavily against the State. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192.

The second trial setting was continued on Vasquez's request so that could obtain information that he contended had just been recently created. He urged that Rachel Ramirez authored a message sent through a dummy Facebook account sometime between February 10 and February 18, 2016. Vasquez argues, however, that the entire Facebook issue arose from Rachel Ramirez's recalcitrance in appearing at the February 10 hearing, her allegedly false answers on the stand at the several hearings, and then the creation of the Facebook message. Even if we presume that the trial court made fact findings to that effect, none of her actions necessitated a continuance of the trial. Vasquez made the strategic decision to seek the continuance so he could obtain additional information upon which to impeach Ramirez at trial. That tactic may well have been a wise strategy, but it is not one chargeable against the State. The time between the February 19, 2016 and the April 22, 2016 trial setting does not count against the State. *Shaw*, 117 S.W.3d at 890 (continuances obtained by the defense not weighed against the State).

Prior to the April 22 trial setting, the court held two hearings on the production of the Facebook information. Out of these two hearings, Vasquez claims the record supports a finding

Vasquez's counsel began his argument on the speedy trial motion with a request that the parties continue their plea discussions. In any event, the period when the plea talks took place overlaps with and explains in part why Vasquez changed counsel.

of "bad faith" acts by the State. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 (intentional delays by the State count heavily against it). In particular, Vasquez argues that the State's attorney drafted an order different from the trial court's oral ruling made at the March 23 hearing. He claims the order was approved as to form on March 30 by an attorney from the Public Defender's Office when lead counsel was out of town. Vasquez reset the hearing to enter the proper order. Even at that, the State waited until the day before trial to file a motion to reconsider the order, which it attempted to have heard on April 22, the morning of trial. While the record supports portions of Vasquez's claim, and we might presume the trial court made implied findings of bad faith by the State, it fails in one essential way: it fails to account for any *delay* in the proceedings.

First, the trial court never ruled on the State's motion to reconsider the Facebook order, and the April 22 trial was not continued based on that motion, or how the State dealt with the Facebook issue. The case was not tried because too many venirepersons were disqualified to obtain a twelve-person jury. Once that happened, the trial had to be reset the case whether the Facebook records were produced or not.

Moreover, on the face of the record, the State did not have the unilateral ability to comply with the trial court's second Facebook order. Obtaining information from Facebook is governed by the Stored Communications Act, 18 U.S.C.A. § 2701 et. seq. (West 2015)(the "SCA"). The SCA "creates a set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information." Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1212 (2004). How one obtains information under the SCA turns on who the information is requested from, what is being requested, and how old is the information sought; specific procedures apply to each. 18 U.S.C.A.

15

§ 2703(a)(b)(c)(d). Two types of entities hold stored electronic communications: (1) "Electronic Communication Service" providers (an ECS) and (2) "Remote Computing Service" providers (an RCS). *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900 (9th Cir. 2008), *rev'd on other grounds sub nom., City of Ontario, Cal. v. Quon*, 560 U.S. 746, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010).[9] The SCA also distinguishes between seeking information about a subscriber (i.e. who is the Facebook account holder), and seeking the actual substance of communications sent by a subscriber (i.e., what message the Facebook account holder sent). 18 U.S.C.A. 2703(a)(b). Both an ECS and RCS are generally prohibited from disclosing the contents of communications, or information about the subscriber, except as provided by specific statutory exceptions. 18 U.S.C.A. 2702(a)(b) and (c). Finally, the SCA distinguishes between communications sent in the last 180 days verse older communications. *Id*. at § 2703(a).

Facebook has been held to be an ECS. *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 980 (C.D. Calif. 2010). The second Facebook order sought not only the identity of the subscriber, but also the substance of communications sent. And the communication he complained of was sent within 180 days of the date of the order. Under the SCA, however, the only way to obtain the substance of a communication sent within the last 180 days from an ECS (here Facebook) is through a *warrant* issued from a court of competent jurisdiction under the Federal Rules of Criminal Procedure or, in the case of a State court, under the state's warrant procedures. 18 U.S.C.A. § 2703(a)("A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less,

[9] The *Quon* case involved claims against a city and a wireless communication service. The U.S. Supreme Court denied certiorari as to the wireless communication service. *USA Mobility Wireless, Inc. v. Quon*, 558 U.S. 1091, 130 S.Ct. 1011, 175 L.Ed.2d 618 (2009). The Court reversed only as to the claims against the city under a Fourth Amendment analysis. *City of Ontario, Cal. v. Quon*, 560 U.S. at 750, 130 S.Ct. at 2624.

only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction."); *see also Love v. State*, 543 S.W.3d 835, 844 (Tex.Crim.App. 2016)("All of this leads us to conclude that the content of appellant's text messages could not be obtained without a probable cause-based warrant."). The State had no unilateral right to obtain the communications that Vasquez sought. Only a neutral magistrate could have ordered the production of that material. The SCA indeed requires that a governmental entity initiate the request (or here, application for a warrant), but there is nothing in the record that shows the State did not do so.

As to the identity of the Facebook account holder--the information that Vasquez claimed he actually wanted--the State's earlier draft order tracks the SCA and appeared to be the proper means to obtain that information. *Id.* at § 2703(c)(A) and (d)(account holder information can be obtained from and ECS or RSC by a court order for disclosure upon a finding that "the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.").[10] Thus whatever the motives of the State in the drafting of its order, or in the timing of its arguments, the face of the record shows that it never had any unilateral right to fully comply with the order Vasquez insisted on.

In summary, the six-month period from date of arrest to the first trial setting does not count against the State. The five-month period between the first trial setting and the second trial setting counts against the State, but is a more neutral reason and does not count heavily. The two-month

---

[10] The State's attorney claimed below that they obtained a document from Facebook with the personal data, including a phone number, of the account holder and that was turned that over to Vasquez's counsel.

17

period, from the second trial setting to the third trial setting does not count against the State. Had the trial court reset the case (hopefully with a larger panel) following the April mistrial, that period would have also counted against the State (as did the period following the first mistrial), but not heavily so. We conclude that the reason for delay factor weighs against the State, but not heavily.

### Assertion of the right

A defendant has no duty to bring himself to trial; rather that is the State's duty. *Cantu*, 253 S.W.3d at 282-83. Yet a defendant has some responsibility to assert their rights. *Id.* Accordingly, in *Barker*, the Court concluded that "the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." 407 U.S. at 528, 92 S.Ct. at 2191; *see also Hopper*, 520 S.W.3d at 924.

In assessing the weight of this factor, we consider whether and how a defendant asserts the speedy trial right. *Cantu*, 253 S.W.3d at 282-83. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Id*. "Repeated requests for a speedy trial weigh heavily in favor of the defendant," while the absence of those requests suggest the defendant seeks only a dismissal. *Id*.

The record supports an implied finding that Vasquez sought an early trial setting, at least for the time period when he was in jail. After rejecting the State's plea offer on August 12, 2015, the trial judge noted that Vasquez "requested [a] quick trial." At that first trial when the parties ran the panel, Vasquez's counsel asked the State to make the motion for mistrial, because "[Vasquez] wants to go today real bad." In the first five months of the case, Vasquez filed two pro se petitions for habeas corpus seeking release from jail based on the delay in the proceedings. He also filed his own pro se motion for speedy trial. While titled as a "Motion for Speedy Trial", the body of the motion expressly requested a dismissal. Following his release from jail, he next

18

time asserted the speedy-trial right in a motion filed on the morning of the third trial setting (April 22, 2016). That motion also sought only a dismissal. The assertion factor weights in Vasquez favor, but only slightly. He pressed for an early trial while he was incarcerated, but once released, only made a single request, and that in response to a State's motion on a discovery matter.

### Prejudice from the delay

The last factor is prejudice to the defendant. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. That prejudice can take several forms: (1) the burden of pretrial incarceration; (2) the anxiety and concern of the accused (i.e. public scorn); and (3) impaired ability to defend the case (i.e. lost witnesses and fading recollections). *Id.* Prejudice to the defense's case is the most important consideration. *Id.* It is also the most difficult to prove, because lost memories are "not always reflected in the record" and "what has been forgotten can rarely be shown." *Id.*; *see also Doggett,* 505 U.S. at 655, 112 S.Ct. at 2693. ("Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.").

Nonetheless, the defendant carries the burden to show prejudice. *Cantu*, 253 S.W.3d at 280. The defendant's burden of proof on prejudice "'varies inversely' with the State's degree of culpability for the delay." *Id., citing to Doggett*, 505 U.S. at 657, 112 S.Ct. at 2693. "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280-81. To ameliorate a defendant's burden in a case of *extraordinary* delay, the courts have presumed that the delay harms the ability to mount a defense. *Shaw,* 117 S.W.3d at 890, *citing Doggett,* 505 U.S. at 655, 112 S.Ct. 2686). The courts apply such a presumption when the period of delay is measured in several years, and not, as here, in a matter of

19

months.  *See Gonzales*, 435 S.W.3d at 812-15 (discussing federal cases applying the presumption with delays ranging from five to ten years).  In *Gonzales*, the court applied relieved the defendant of the burden of showing prejudice to his defense based on a six-year delay.  *Id*.  The delay in this case, however, would not trigger any such presumption, and Vasquez carried the burden of proving actual prejudice.  Moreover, in the absence of bad faith delays or egregiously negligent conduct by State actors, Vasquez carries higher burden of proving negligence.  *Cantu*, 253 S.W.3d at 280-81.

Vasquez was arrested on March 16, 2015 and would not have been released from jail until at least November 17, 2015.  The record does not show any unique consequences of that eight-month detention.  At a bond reduction hearing on October 7, 2015, his counsel represented that he had construction jobs lined up if he could get out of jail.  When the jobs were set to begin, or whether Vasquez actually lost the work, however, was never evidenced.  We do not discount the impact of detention--any detention--on a free citizen.  *See Barker*, 407 U.S. at 532-33, 92 S.Ct. at 2193 (noting deleterious effects of pretrial incarceration, including disruption of family life, enforced idleness, and exposure to jail environment).  Yet even in *Barker*, the defendant's ten-month incarceration and subsequent three-year delay in the proceedings resulted in what the Court describe as a "minimal" prejudice.  *Id*. at 534, 92 S.Ct. at 2194.  The period of detention here was less, and followed by a much quicker disposition.  We also note Vasquez was also being held on a misdemeanor assault charge involving a different person in a different court.  His first petition for pretrial habeas relief also sought release from incarceration on that charge.  Any prejudice from incarceration is in part undercut by his detention on that other charge.  *See Balderas v. State*, 517 S.W.3d 756, 773 (Tex.Crim.App. 2016), *cert. denied*, 137 S. Ct. 1207 (2017)(discounting incarceration prejudice when defendant held on other charge).

Delay can also prejudice a defendant through the continued anxiety and scorn from facing criminal charges. *Klopfer,* 386 U.S. at 221-22, 87 S.Ct. at 982-93. Our court of criminal appeals has held, however, that "evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 285-86. The same court was unimpressed with the "public opprobrium" from an eighteen-month delay in the proceedings, particularly given the absence of multiple pretrial proceedings, no evidence of lost wages, or ignored requests for a speedy trial. *Id*. at 277, 286. The record in this case is bare of any evidence of any inordinate anxiety. Vasquez did not testify, nor did any family member or friend who observed him during this time. The most he points to is the pro se motion filed in October 2015, that states he "has suffered much anxiety and concern regarding the outcome of the trial herein." This statement fails to meet his burden of showing something more than generalized anxiety. *See Starks v. State*, 266 S.W.3d 605, 613 (Tex.App.--El Paso 2008, no pet.)(noting defendant failed to introduce any evidence that the anxiety he suffered either was abnormal).

At the hearing below, Vasquez also asserted four ways in which the delay prejudiced the defense of his case: (1) the victim's mother, Rachel Ramirez had more time to influence the child's testimony; (2) Vasquez was inevitably losing his memory; (3) a CPS case worker was unavailable; and 4) his cross examination of an older victim would be less effective than cross examination of a younger victim. Vasquez does not attempt to defend the claim of losing the CPS witness on appeal, but contends that State has failed to rebut the other claims. The bigger problem with these claims is that they were all assertions made through argument of counsel, and not shown through evidence or testimony. We agree that an assertion by counsel who has first-hand knowledge of an event can be considered as evidence by the trial court. *Gonzales*, 435 S.W.3d at 811 (attorney

statements may be considered as evidence if based on first-hand knowledge). These assertions, however, were for the most part not of particular facts, and not based on any first hand-knowledge.

Vasquez counsel argued that Rachel Ramirez had a year-and-half to influence the complaining witness and her siblings. He specifically referenced the complaining child's statement in December 2014 that she and Rachel Ramirez went off to "get their story straight." Even if true, that assertion of fact did not support an inference that there was a continuing effort to influence the child, or that there was any effort to do so uniquely during any period of delay.

Vasquez counsel also stated that he was concerned about the loss of memory, particularly Vasquez's memory. A bare claim of the possibility of memory loss, however, is not sufficient to prove a speedy trial right violation. *Munoz*, 991 S.W.2d at 829; *U.S. v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986); *Barker*, 407 U.S. at 534, 92 S.Ct. at 2194.

Nor does the record support counsel's claim that he could better cross examine a fourteen year old victim, than the same victim at age sixteen. He contended that the victim had gained more sexual knowledge that would somehow make her less susceptible to cross-examination. That claim as to this particular victim is not based on first-hand knowledge, and we could just as easily presume that an older victim could be less persuasive to a jury.

Delay is a two-edge sword, potentially cutting both against the State and the defense's cases. *Barker*, 407 U.S. at 521, 92 S.Ct. at 2187. From the time of the first trial setting in this case, Vasquez was able to exclude his own inculpatory statement sent by text message. He was also able to obtain a possible statement by the mother of the complaining witness that might be useful in impeaching her. Nothing in the record would support a finding that that delay necessarily worked a detriment, as opposed to a benefit on the merits defense of the case. The prejudice factor weighs in the State's favor.

22

**Balancing the factors**

Paying deference to the trial court's findings which are supported by the record, we conclude the length of delay is neutral or only marginally in Vasquez's favor, the cause of the delay and assertion of the right weighs against the State, but only slightly, and the prejudice element is in the State's favor. The difficulty with speedy trial claims is that a court has but one remedy: dismissal of the indictment. *Barker*, 407 U.S. at 522, 92 S.Ct. at 2188. "This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried." *Id*. For this reason, dismissal "is mandated only upon a finding that an accused's Sixth Amendment speedy-trial right was actually violated." *Cantu*, 253 S.W.3d at 281. Nor do we apply the *Barker* factors in wooden application, devoid of "common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id*. In this case, the parties made two honest attempts to timely try the case, and the trial court continued the case once on Vasquez motion, all within a thirteen-month time span. That the factors tilt only slightly in one direction or the other, and in absence of any proven prejudice, we conclude the trial court erred in dismissing the indictment. We grant the State's single issue on appeal, reverse the trial court's dismissal of the indictment, and remand the case for further proceedings not inconsistent with this opinion.

August 31, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

23